WILLIAM HASKELL *versus* MONMOUTH FIRE INS. CO.[*]

Where a mortgagee assigns the mortgage and notes secured thereby, with a covenant that he "is lawfully seized in fee of said notes and has good right to sell the same," he is estopped from denying that they were not all due according to their tenor.

In such a case, a claim of the mortgagee upon an insurance company by an order from the mortgager, for money due in consequence of the destruction of the building upon the mortgaged property, and to be indorsed upon the mortgage notes, passes with the assignment of the mortgage.

If the mortgager obtains an assignment of the claim upon the insurance company, from such assignee, he is entitled to collect the same of the company, and payment by them to the mortgagee is no defence to an action therefor by the mortgager.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.
DEBT on a judgment; defence, payment.
The case is fully stated in the opinion.

*A. P. Gould*, for plaintiff.

*Wales Hubbard*, for defendants.

The opinion of the Court was drawn by

CUTTING, J.—This suit is brought upon a judgment recovered by the plaintiff against the defendants in this Court in 1854, which has been satisfied, whether in whole or in part is the question now presented.

It appears *that*, on December 30, 1847, one *Green Longfellow, jr.*, conveyed to the plaintiff one hundred acres of land with the buildings thereon standing, for which he received four notes for one hundred dollars each, payable in one, two, three and four years with interest, signed by the plaintiff and secured by his mortgage of the same premises, the first of which notes was subsequently paid by the plaintiff.

*That*, on September 21, 1849, the defendants insured the plaintiff's building for a period of four years in the sum of

---

[*] Argued at Law Term for 1863.

three hundred and fifty dollars, and *that* the property so insured was consumed by fire on November 23d, of the same year.

*That*, on December 4, 1849, *Longfellow* filed, with the defendants' secretary, a notice in writing of his holding the mortgage, stating the amount, which he claimed as equitably due thereon, and his intention to secure to himself the benefit of the provisions of the Act approved March 19, 1844.

*That*, on December 10, 1849, the plaintiff transmitted a paper to the defendants of the tenor following, viz.: "Gents., You are hereby requested to pay to Mr. Green Longfellow, jr., of Augusta, the sum of one hundred and fifty dollars, according to the rules and usages of your company, (the said amount being for a valuable consideration received by me of said *Longfellow*,) in part payment of my claim against said company on account of the buildings insured in policy numbered 1891, issued by said company Sept. 21, 1849, and destroyed by fire Nov. 23, 1849." This paper was sent to and received by the defendants from *Longfellow*, and detained by them until it was subsequently delivered to the plaintiff, without the consent of *Longfellow*. It was never paid by the company, or the amount specified therein indorsed on the notes secured by the mortgage.

It further appears *that Longfellow*, on Nov. 23, 1850, in consideration of three hundred dollars, paid by *Sarah H. Sylvester*, transferred to her all his right, title and interest in the mortgage and the three last described notes, and covenanted that "*he was lawfully seized in fee of said notes, and had good right to sell the same.*"

*That*, on March 31, 1852, *Sarah H. Sylvester*, in consideration of two hundred and ten dollars, paid by *Stephen Chadwick*, assigned to him the mortgage and the three notes last described therein, and covenanted that "*she was fully seized in fee of said notes, and had good right to sell and convey the same.*" The foregoing assignments were duly recorded.

In 1853, *Chadwick* notified the company that he was the

holder of the mortgage and the three notes, on which he says "*nothing has been paid,*" and that he claims a lien on the sum insured, by virtue of the statute.

It moreover appears, *that* the company refused to pay the sum insured or any part thereof, but contested their legal liability. Whereupon the plaintiff commenced an action against them in 1851, on the policy, which resulted in a judgment against them in 1854, as already stated, for the sum of four hundred and nineteen dollars, damages, and costs of suit taxed at one hundred thirty-seven dollars and two cents. *That,* on March 14, 1854, just prior to the rendition of the judgment, *Stephen Chadwick,* the last assignee of the mortgage which had previously been foreclosed, "remised, released, and forever quitclaimed to *William Haskell,* (the plaintiff,) all his right, title, claim and interest in and unto all or any part of the insurance due, or which may be due to him from the *Monmouth Mutual Fire Insurance Company,* by virtue of said mortgage deed; provided, that nothing herein shall be so construed as to interfere or do away with any bargain made between said *Haskell* and said *Green Longfellow, jr.,* prior to this date, in relation to said insurance."

Without proceeding further, at present, in the summary of the documentary evidence, we may here pause to consider what interest *Chadwick* conveyed to the plaintiff. After the loss by fire, *Longfellow,* the mortgagee, assigned his mortgage and the three notes to *Sarah H. Sylvester,* with not only no indorsement of part payment, but with a covenant in substance that the whole amount of the notes were then due and payable according to their tenor. After this assignment *Longfellow* ceased to be mortgagee, and the lien on the amount due from the insurance company depended wholly on the mortgage, and could not be separated therefrom without the loss of its vitality. The claim of the mortgagee on the company and the notice thereof given, and other acts done in pursuance thereof, accompanied the mortgage and were transferred and accrued to the assignee.

It embraces the order or assent that the company might pay to the mortgagee the sum of one hundred and fifty dollars; and, inasmuch as that sum was not indorsed on the notes before their transfer, the assignor is estopped by his covenant, before cited, to deny that they were not all due according to their tenor.

Subsequently, the mortgage and notes were assigned by *Sylvester* to *Chadwick* with the like covenant, who released, as we have seen, to the plaintiff his lien claim on the company with the proviso before stated. The parol testimony introduced by the plaintiff as to his knowledge and consent of the introduction of the proviso we exclude. We can only judge as to its effect when considered in connection with the other documentary evidence. The proviso had relation to *any bargain* which had previously been made between the plaintiff and *Longfellow*. It is difficult to perceive any bargain made between those parties. It, at most, was only an assent that the company might pay to the then mortgagee a portion of the sum insured which was not paid and not indorsed upon the notes either before or after they were transferred. If it had been indorsed before the foreclosure had expired, and the title to property of more value than the sum secured had become absolute, it might have raised a consideration, and induced the plaintiff to have redeemed. It seems from the parol testimony that he manifested such a desire, but was met by *Chadwick* with a refusal unless he would pay to him the full amount of the notes.

But, were the company legally justified in paying to *Longfellow* the sum now claimed of them in this suit? If they were, this action cannot be maintained.

It has already appeared that, on March 14, 1854, *Chadwick*, then having the ostensible lien on the company, released the same to the plaintiff, so far as his interest was concerned. What was his interest at that time? That depends upon the effect to be given to the order introduced in defence, dated Feb. 17, 1854, of the following tenor:—

"Mr. President of the Monmouth Fire Insurance Com-

pany.   Please pay Green Longfellow, jr., one hundred and fifty dollars and interest, it being the order William Haskell gave to Green Longfellow, jr., and the same which I reserved for him.                "Stephen Chadwick."

This order is presented under peculiar circumstances.   It purports to have been given some four weeks before *Chadwick's* release, yet therein no mention is made of it, and *Chadwick* himself, the defendant's witness, swears that it is not in his handwriting, and that he never saw it until produced at the trial in this case in 1858.   The order was either ante-dated or a forgery, and is to be laid out of the case. The indorsement in pencil on one of the notes and also in writing on the mortgage under *Sarah H. Sylvester's* assignment, and not recorded with the assignment, when considered by the evidence produced, show turpitude and a gross attempt to defraud.   The suspicions of the company, manifested by their requiring Longfellow's indemnifying bond before paying the money, it seems, were justly entertained. But such payment affords them no legal or equitable defence.   Consequently they must be defaulted and judgment rendered against them for the amount wrongfully paid to *Longfellow* and interest on that sum since that time.

*Defendants defaulted.*

APPLETON, C. J., DAVIS, WALTON and BARROWS, JJ., concurred.