## METROPOLITAN ST. RY. CO. v. HOUGHTON.†

(Court of Civil Appeals of Texas. Jan. 28, 1911. Rehearing Denied Feb. 18, 1911.)

EVIDENCE (§ 558*)—EXPERT WITNESSES—EXAMINATION—BIAS—REBUTTAL.

One suing a street railway company for personal injury, having shown on the company's medical expert's cross-examination that he testified for the company in many cases, the company, to rebut any inference of witness favoring the company, could, on redirect examination, show that it frequently settled claims on his report, and that 75 per cent. of the cases examined by him for the company were settled on his recommendation, etc.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 558.*]

Rainey, J., dissenting.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by L. F. Houghton against the Metropolitan Street Railway Company and others. Judgment for plaintiff, and the named defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood and Spence, Knight, Baker & Harris, for appellant. M. M. Parks and Carden, Starling, Carden & Hemphill, for appellee.

BOOKHOUT, J. This is a suit for damages on account of personal injuries alleged to have been sustained on April 26, 1907, while a passenger on one of the cars of the Rapid Transit Railway Company. Appellee, in his second amended original petition, alleged, among other things, in substance: That he is a citizen of Dallas county, Tex.; that defendant is a corporation duly incorporated under the laws of the state of Texas; that while a passenger on one of the defendant Rapid Transit Railway Company's cars, and standing on the rear platform thereof, a car belonging to and operated by the defendant Metropolitan Street Railway Company negligently ran into and against the car upon which he was a passenger, demolishing the rear platform thereof, and seriously and permanently injuring him in his knee and other portions of his body. Plaintiff alleged his damages to be $20,000. The defendant Metropolitan Street Railway Company answered by general demurrer and general denial. The case was tried on June 23, 1909, resulting in a verdict and judgment in favor of plaintiff in the sum of $5,000. Defendant's motion for new trial having been overruled, it prosecuted an appeal.

Error is assigned to the court's action in denying the defendant railway company the right to show by its witness Dr. C. M. Rosser, in substance, that the company more frequently settled cases on his examination and report than were tried in the court. Many propositions are presented under this assignment. The first three, which fully present the appellant's contention, are as follows: First. The plaintiff having proven that the defendant's witness Dr. C. M. Rosser was subject to call to testify in cases of the kind then being tried, if the street car companies thought his testimony important, and having further testified that he did testify for the defendant in a great many cases, the defendant had the right, upon re-examination, to explain such testimony away as due to some other cause than the emotion desired to be shown by it, and as not indicating a bias in defendant's behalf or a deep-seated hostility toward claimants in personal injury suits. Second. When the cross-examination of a witness tends to show bias of the witness, on re-examination by the party offering the witness, such explanations may be made as tend to rebut the inference of hostility to show that the facts elicited on cross-examination were consistent with fairness and good faith, even though such testimony would otherwise be

irrelevant. Third. When an attempt is made on cross-examination to discredit a witness and show bias in the defendant's favor, the defendant ought to have the benefit of any bias or feeling the other way, as calculated in some degree also to affect his testimony.

During the trial Dr. C. M. Rosser was called as a witness by defendant, and testified that he was a practicing physician and surgeon, and has been for the past 20 years, and that he is the general surgeon of the defendants, the Metropolitan Street Railway Company and the Rapid Transit Railway Company. In response to questions propounded by plaintiff's counsel on cross-examination of Dr. Rosser, he testified: "At the time of the alleged injury I represented the three street railway companies here, the Metropolitan, Rapid Transit, and Consolidated. I am subject to call in cases of this kind if the street car companies think my testimony important. I do testify for the defendant in a great many cases. I testify the truth as nearly as I can."

After the above testimony had been developed by plaintiff's counsel, certain questions were asked and proceedings had on the redirect examination of the witness, as follows: Question by the attorney for the railway company: "Mr. Carden asked you if you did not frequently testify for the defendant. I ask you if we do not a great deal more frequently settle cases on your report?" To this question and the answer sought to be elicited counsel for plaintiff objected upon the ground that it was immaterial and irrelevant, which objection was sustained by the court, to which defendants then and there in open court excepted. Had the witness been permitted to answer he would have answered in the affirmative. The question was then asked: "I will ask you to state if more cases are not settled by these defendants on your recommendation than are ever tried in court?" To which question and the answer sought thereby counsel for plaintiff objected on the ground that same were immaterial and irrelevant, which objection was sustained, and the defendants, Metropolitan Street Railway Company and Rapid Transit Railway Company, in open court, excepted. The witness, if permitted, would have answered this question in the affirmative. The witness was then asked: "I will get you to state, Doctor, in what percentage of cases that you have examined the plaintiff, at the instance of these defendants, have such cases been settled on your recommendation?" To which question and answer sought thereby plaintiff's counsel objected on the ground that it was immaterial and irrelevant, which objection was sustained, to which counsel for defendants then and there in open court excepted. Had he been permitted to answer the witness would have testified that 75 per cent. of the cases in which he examined plaintiff for the defendants were settled on his recommendation. Again, the witness was asked: "I will get you to state to the jury and the court whether more cases are settled on your recommendation after an examination of parties injured by this company than are ever sued upon?" To which question and the answer sought to be elicited thereby counsel for plaintiff objected on the ground that it was immaterial and irrelevant, which objection was sustained by the court, to which the defendants, Metropolitan Street Railway Company and Rapid Transit Railway Company, then and there in open court excepted. Had the witness been permitted he would have answered that more cases were settled upon his recommendation after examination of the party injured than were ever sued upon.

We are of the opinion that there was error on the part of the trial court in sustaining the objection to these questions, and in excluding the answers of the witness. The testimony introduced by plaintiff on cross-examination of the witness that: "I am subject to call to testify in cases of this kind if the street car companies think my testimony important, and I do testify for the defendant in a great many cases. I testify the truth as nearly as I can"—was evidently brought out to show a hostility on the part of the witness to plaintiff's case, and a bias on his part in favor of the railroad company. The plaintiff having, on cross-examination of the witness, introduced evidence tending to show hostility on his part against plaintiff, and a bias in favor of the defendant, the defendant on redirect examination was entitled to show by the witness that the company a great deal more frequently settled cases on his report, and that 75 per cent. of the cases examined by him at the instance of the railroad were settled on his recommendation. Had it been shown that 75 per cent. of the cases examined by Dr. Rosser at the instance of the railroad were settled by the company on his recommendation, such evidence would have had a tendency to remove any hostility to plaintiff and any bias in favor of the railroad which the jury may have believed existed on his part. We conclude that the trial court erred in sustaining the exceptions to the questions and excluding the testimony. Wigmore on Evidence, vol. 2, §§ 952, 1119; Clapp v. Wilson, 5 Denio (N. Y.) 289; United States v. 18 Bbls. High Wines, 8 Blatchf. 475 (25 Fed. Cas. No. 15,033); Am. & Eng. Enc. of Law, pp. 1142, 1143; Rice on Evidence, vol. 3, art. 372; Sayles v. Fitz Gerald, 72 Conn. 391, 44 Atl. 735; People v. Zigouras, 163 N. Y. 250, 57 N. E. 466; Comer v. Thornton, 38 Tex. Civ. App. 287, 86 S. W. 20; Strong v. State, 85 Ark. 536, 109 S. W. 538, 539; Underhill on Evidence, § 354b; Greenleaf on Evidence, vol. 1, § 468.

Mr. Wigmore, in his valuable work on Evidence, in vol. 2, § 952, states the rule as follows: "On the general principle of explaining away circumstantial evidence any circumstance of conduct or expression, or of the external situation, of the witness may be explained away as due to some other cause than the emotion desired to be shown by it, or as not indicating a deep-seated hostility. * * * When to a witness is imputed hostility to the opponent, the true process of explanation consists of showing that the facts offered do not really indicate the conclusion suggested; i. e., the hostility. Thus, when the counter evidence does not attempt to do this, but admits the hostility and desires to show that it was justifiable by the opponent's conduct, the offer is improper in two ways, first, because it does not at all explain away, but concedes that hostility exists, and, secondly, because it tends to prejudice unfairly the cause of the opponent by showing him to be an unjust man; and for these reasons such evidence may be excluded." The same authority, § 1119, says: "A denial of the fact of bias or the like by other testimony is always allowable, for any testimony of the opponent admissible to prove a discrediting fact must of course in fairness be allowed to be met by testimony denying the alleged fact."

In the case of Clapp v. Wilson, 5 Denio (N. Y.) 289, the court said: "It is, however, quite evident that the referees reported in favor of the plaintiff because they discredited Carr, as they could hardly have reported in his favor on any other ground. This being the case, and it being a fact in the cause that Carr was the defendant's son-in-law, I think they should have permitted the defendant to show that he and the witness had been for some time at variance. * * * When attempts had been made to discredit the witness and show a bias in the defendant's favor, the defendant ought to have the benefit of any bias of feeling the other way as calculated in some degree also to affect his testimony."

In the case of United States v. 18 Barrels High Wines, 8 Blatchf. 475 (25 Fed. Cas. No. 15,033), Circuit Judge Woodruff announced the rule as follows: "There is nothing, I think, in the objection to the testimony given by way of explanation of the conduct of the witness Avery. It was not given as evidence in chief to affect the claimants on the question in issue, but only to avoid the effect of facts elicited by the claimants on their cross-examination. When cross-examining counsel see fit to call out from the witness collateral facts which tend to create distrust of his integrity, fidelity, or truth, it is entirely competent and proper for the adverse party to ask of the witness an explanation which may show that the facts thus elicited were in truth wholly consistent with his integrity, fidelity and truth, although they thereby prove circumstances foreign to the principal issue, and which, but for such previous cross-examination, they could not be permitted to prove."

In the American-English Encyclopedia of Law, vol. 30, pp. 1142, 1143, the rule is stated as follows: "An attack on the credibility of witness by direct evidence of bad character or reputation may be refuted by evidence of his good character; and other discrediting testimony by evidence in explanation or contradiction, given by witness himself, or in many instances, by other witnesses called for that purpose. * * * Thus, a witness against whom evidence has been introduced tending to show bias in favor of the party calling him or against adverse party may be supported by evidence in rebuttal which tends to disprove the fact."

In Rice on Evidence, vol. 3, art. 372, the author in commenting upon the rights of a party introducing a witness when such witness has been attacked by proof of conviction of crime, says: "It is a matter of no small importance to know that relief may be afforded in part at least for those unfavorable impressions by eliciting upon redirect examination testimony from witness declaratory of his innocence of the crime charged, and this although record of conviction is produced. Such a record is not conclusive of a person's guilt, and witness has the right to show his innocence and relieve himself from the stigma of conviction."

Sayles v. Fitz Gerald, 72 Conn. 391, 44 Atl. 735. In this case defendant was executor of the will of John Reilly, deceased. In discussing the right of the defendant to make an explanation of what appeared to be discrediting testimony, the court said: "After defendant had testified that deceased, just before his death, told him that he owed no one but Mrs. Butcher, and on cross-examination admitted that several bills had been presented and that they had been paid by him, he should have been allowed to explain that he compromised these claims rather than subject the estate to the expense of litigation."

In Comer v. Thornton, 38 Tex. Civ. App. 287, 86 S. W. 20, opinion by Justice Eidson, the court held: "If facts are brought out on cross-examination which tend to impeach the integrity or character of the witness, or to impugn the motive of the witness who is a party to the suit, as relating to certain acts or conduct on his part in reference to the suit, he will be permitted on redirect examination to explain what induced or made necessary such acts or conduct on his part, and thus show, if he can, that such acts or conduct are consistent with the truthfulness of his present statement."

In Lenfest v. Robbins, 101 Me. 180, 63 Atl. 730, the court held that: "When impeaching conduct of a witness is drawn out upon cross-examination which is indicative of deep-seated hostility and bias on his part against one of the parties, it is error to

exclude all explanation of such conduct upon the redirect examination." While defendant in this case was on the stand testifying in his own behalf, plaintiff on cross-examination developed the fact that defendant had not spoken to the plaintiff for two years. On redirect examination the defendant was asked: "You were asked if you had spoken to Mr. Lenfest during the last two years. I will ask the question, Why didn't you speak to him?" to which question and answer sought to be elicited objection was made and sustained. Counsel for defendant stated: "I think I have the right to show it was not on my client's side." In commenting on this ruling the Supreme Court of Maine said: "Standing unexplained, the conduct of the defendant might indicate a long-standing hostility on his part at the time of the assault. It matters not who was in fault. The first ground stated as to the purpose of the question is not tenable. To show who was in fault would be in effect to concede the hostility and justify it. The second ground stated, however, rests on a solid foundation. The defendant had the right to show that the 'bad terms'— hostility—was not on his side. He had a right to explain the circumstances and show that his failure to speak to the plaintiff did not indicate a deep-seated hostility, such as would be likely to lead him to assault him or to influence his testimony and affect his credibility at the trial. Wigmore, Ev. 952. In Williams v. Gilman, 71 Me. 21, it was held that a party could not, upon cross-examination, introduce testimony of collateral facts and then object to an explanation of them. The fact that the defendant had not spoken to the plaintiff for two years before the assault was drawn out by the plaintiff. Its natural effect was to impeach his credibility and raise an inference of long-standing hostility which might discredit his account of what took place at the time of the assault. He was entitled to give such explanation as he could. In State v. Reed, 62 Me. 129, a witness was permitted to testify what was his reason for giving contradictory testimony at a former trial, and it was there said that 'to refuse an opportunity to explain would be in effect to condemn a party without a hearing.' A party has as much right to explain his impeaching conduct as a witness has to explain his contradictory statements. The right is given in order that the jury may have the facts necessary to form a correct judgment as to the motive and credibility of the witness."

In Strong v. State, 85 Ark. 542, 109 S. W. 538, 539, the court in majority opinion held: "The appellant, on cross-examination, asked a witness for the state if his brother-in-law and appellant had not had some trouble this summer, and the witness answered in the affirmative. The prosecuting attorney, on redirect examination, asked the witness the following questions: 'Q. I will ask you if you have been threatened by anybody as to what you might swear, by anybody connected with defendant? Q. I will ask you has anybody connected with the defense told you what they would do if you would come here and tell the truth?' And the witness answered: 'A. I heard a fellow say yesterday, and he did not say who it was, that I had better not testify against Sim Strong.' These questions and the answer thereto were over the objections and exceptions of appellant. It would have been incompetent for the state to show that one of its witnesses had been threatened by some one, without connecting the defendant with it. But as the appellant had sought to discredit the witness by showing that he was biased on account of a difficulty that appellant had with the brother-in-law of the witness, it was proper for the state in rebuttal of this, and not as original evidence, to show that the witness had been told by some one that he had better not testify against appellant. This testimony was competent on the question of the bias or prejudice of the witness, and tended to rebut the idea that the witness was biased against appellant. It went to the question of bias, and was competent as affecting the credibility of the witness. Moreover, the majority of the judges are of the opinion that the testimony of threats was too remote and indefinite to prejudice appellant."

Justice McCulloch, while concurring in the judgment, dissented from the reasoning of the majority of the court and stated the rule in the following forcible language: "I am not content to rest my concurrence in the judgment on the ground that the testimony of witness White concerning threats made to him was not prejudicial to the defendant, if it was inadmissible. It will be remembered that this testimony of the witness was given on redirect examination by the prosecuting attorney after he had stated on cross-examination that his brother-in-law and the defendant had had a difficulty, and that he (witness) was a witness in the case. This testimony was drawn out by the defendant to show bias on the part of the witness, and the state had a right, on redirect examination, to rebut this by showing that no bias existed in favor of the state, or by showing that the bias, if any, was in favor of the defendant. This, under the familiar doctrine of the right of a party to introduce evidence to support or rehabilitate the credibility of his witness after it has been attacked by his adversary. Prof. Wigmore says: 'In the process of rehabilitating an impeached witness there are four possible stages of the case at which the attempt may be made—the cross-examination of the impeaching witness, the re-examination of the impeached witness, the direct examination of a new witness called in rebuttal, and the reopening of the case

after both sides have closed.' 2 Wigmore on Evidence, § 1100. The same learned author in another place (section 1119) on this subject says: 'A denial of the fact of bias or the like by other testimony is always allowable, for any testimony of the opponent admissible to prove a discrediting fact must of course in fairness be allowed to be met by testimony denying the alleged fact.' The rule is also stated clearly in the American and English Encyclopedia of Law (volume 30, p. 1143): 'A witness against whom evidence has been introduced tending to show bias in favor of the party calling him or against the adverse party may be supported by evidence in rebuttal which tends to disprove the fact.' When a defendant, by drawing out facts on cross-examination of a state's witness tending to show bias on the part of his witness, introduces that issue, the state has the right to rebut this by showing any fact tending to establish the absence of bias in its favor. Now, the defendant, in order to how bias on the part of the witness, would have to show that the witness was testifying under stress of threats which the jury might conclude influenced his testimony. Underhill on Criminal Evidence, p. 307. The state enjoyed the same privileges after the credibility of its witness had been drawn in question, and for the purpose of restoring his credit could introduce that kind of testimony tending to show that there was in fact no reason why the witness should be biased in favor of the state, or by showing that his bias was in favor of the defendant. Objection is made that this testimony had an improper tendency to create in the minds of the jury an impression that either the defendant or his friends had attempted to intimidate state's witnesses. If fears were entertained by defendant that the jury would consider the testimony for any such purpose, he should have requested the court to instruct the jury not to consider it for that purpose. As the testimony was admissible for one purpose it was the duty of the party who anticipated an improper consideration of it for another purpose to ask the court to prevent that."

The assignments of error not discussed have been carefully considered and, because we are of the opinion they do not point out error, the same are overruled.

For the error indicated, the judgment is reversed and the cause remanded.

RAINEY, C. J. I feel constrained to disagree with the conclusion reached by my Brethren in regard to the admissibility of Dr. Rosser's testimony excluded by the court. It is well settled that when an attempt is made on cross-examination to discredit a witness and show bias in the defendant's favor, the defendant has the right to introduce testimony which has a tendency to relieve the witness of such discredit. But I do think the testimony offered does not, in the least, tend to relieve the witness of the suspicion of bias in favor of the defendant that his testimony on cross-examination had a tendency to create. The testimony offered—that more cases had been compromised by the defendant on the reports made by him than ever tried in court—in my opinion does not in any way tend to show a want of bias in the witness. It in no way explains his feelings toward the defendant. It would show his loyalty to the defendant, and that it had confidence in him, and was willing to act on his reports as to the injuries received by the party injured. He doubtless made faithful reports from which the defendant concluded it was more advantageous to it to settle by compromise than litigate; then how can it be said that as the defendant saw fit to compromise such cases it tended to show that the witness was not biased in its favor, I am unable to say. Believing the testimony offered would introduce a collateral subject not pertinent to any issue in the case, the evidence was not legitimate, and the lower court did not err in so holding.