BOWLIN *v.* STATE.

Opinion delivered January 16, 1928.

1. CRIMINAL LAW—VALIDITY OF CONVICTION.—The validity of a conviction of a criminal offense is not affected in any manner by reason of the fact that there was no money in the county treasury to pay jurors and witnesses.

2. CONSTITUTIONAL LAW—DUE PROCESS.—One convicted of a felony was accorded due process of law where he was convicted at a trial in the circuit court held at the time and place and in the manner prescribed by law, and had an opportunity to make all defenses which he had and to have present all witnesses in his behalf.

3. WITNESSES—IMPEACHMENT ON CROSS-EXAMINATION.—One on trial for a felony may be cross-examined as to how many times he had been fined and pleaded guilty for fighting or other offenses in the county since he had lived there.

4. CRIMINAL LAW—CROSS-EXAMINATION OF DEFENDANT—HARMLESS ERROR.—Cross-examination of defendant in a criminal case, as to how many times he had been fined and pleaded guilty for

fighting or other offenses in the county since he had lived there, if error, *held* harmless, in view of his answer that he had not been fined in the last two years.

5. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—Refusal of an instruction asked by defendant was not error where the court in its instructions fully and fairly submitted the respective theories of the State and the defendant.

6. CRIMINAL LAW—WEIGHT AND CREDIBILITY OF TESTIMONY.—The weight and credibility of testimony is a matter for the determination of the jury.

7. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—In determining whether evidence is sufficient to sustain a conviction the evidence must be considered in the light most favorable to the state.

8. RESCUE—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a conviction of rescuing a prisoner from lawful custody in violation of Crawford & Moses' Dig., § 2571.

Appeal from Johnson Circuit Court; *J. T. Bullock,* Judge; affirmed.

*Jesse Reynolds,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, C. J. John Bowlin prosecutes this appeal to reverse a judgment of conviction against him for rescuing one who was in custody after a lawful arrest, in violation of the provisions of § 2571 of Crawford & Moses' Digest.

The first assignment of error is that the court had no jurisdiction of the case, because there were no funds in the county treasury of Johnson County for the purpose of holding circuit court at the time the trial of the defendant was had. This assignment of error is not well taken. The defendant was prosecuted and convicted at a trial in the circuit court of Johnson County, which was held at the time and place and in the manner prescribed by law. He had an opportunity to make all the defenses which he had to the indictment and to have present in court all the witnesses in his behalf. This constituted due process of law. The fact that there was no money in the treasury to pay the jurors and witnesses did not in any manner affect the legality of the trial.

This was a collateral issue, and could not affect the jurisdiction of the court or the legality of the proceedings at the trial.

The next assignment of error is that the court allowed the prosecuting attorney to ask the defendant the following question: "How many times have you been fined and pleaded guilty for fighting, or other offenses in Johnson County since you have lived here?" The defendant answered that he had not been fined in the last two years. In the first place, it may be said that the question was a proper one on cross-examination, as affecting the credibility of the defendant as a witness. *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937. Besides, the defendant answered the question in the negative, and no prejudice could have resulted to him from the question when it was considered in connection with his answer.

It is next insisted that the court erred in instructing the jury. Objection was made by the defendant to the giving of several instructions to the jury and in refusing to give an instruction asked by him. We do not deem it necessary to set out these instructions or to comment upon them at length. The defendant was indicted under § 2571 of Crawford & Moses' Digest. The court read the statute to the jury, and fully and fairly instructed the jury upon the doctrine of reasonable doubt and the credibility to be given to the witnesses. The court, in other instructions, fully and fairly submitted to the jury the respective theories of the State and of the defendant. The instructions were very full, and were fair to the defendant.

The main reliance of the defendant for a reversal of the judgment is that the testimony was not legally sufficient to warrant the verdict. It is true that, according to the testimony of the defendant and of his witnesses, he only attempted to persuade the officers to let him take his brother home instead of putting him in jail, and that he finally interfered because he thought the deputy sheriff was going to shoot his brother, whom he was charged with rescuing from the deputy sheriff. Under our judi-

cial system the jury are the judges of the credibility of the witnesses and the weight to be given to their testimony. Hence, in determining the legal sufficiency of the evidence to support the verdict, we must consider the evidence in the light most favorable to the State. When this is done, it cannot be said that the evidence for the State has no probative force which would warrant the jury in returning a verdict of guilty.

According to the evidence for the State, a deputy sheriff of Johnson County arrested Jim Bowlin, a brother of John Bowlin, and started with him to jail. While they were on their way to jail, John Bowlin overtook them and told the deputy sheriff that he was going to take his brother back with him. He told the deputy sheriff that he was not going to allow him to take Jim Bowlin to jail. Finally Jim Bowlin threw down his hat, stated that he was not going to jail, and started to run. John Bowlin jumped in front of the deputy sheriff, and grabbed at the shotgun which he carried. The deputy sheriff then hit John Bowlin with his gun, and Jim Bowlin ran off a little ways. John cursed the officers, and kept telling them that they could not take his brother to jail.

Other witnesses for the State testified that, when John Bowlin overtook the officers, he told them that they could not take his brother Jim to jail, and that he was not going to have the officers going after Jim with a shotgun. Jim Bowlin was drunk, but insisted that John should go back home. John Bowlin replied that he would not do so, and told the officers that he was going to take Jim back home with him. When Jim Bowlin started to run, John Bowlin made a pass at the deputy sheriff; then the deputy sheriff struck him with his gun.

According to the testimony of other witnesses, John Bowlin seemed to be mad because the officers had a shotgun when they arrested his brother, and John repeatedly told the officers that they could not take his brother to jail. When Jim Bowlin started to run, John Bowlin jumped between the deputy sheriff and Jim. When he

did this, the deputy sheriff struck John Bowlin with his gun.

Under these circumstances it was a question for the jury to determine whether or not John jumped in front of the officers to prevent them from shooting his brother or whether he did so to rescue his brother from the custody of the officers. Hence, when the evidence is viewed in the light most favorable to the State, it was legally sufficient to warrant a verdict of guilty.

We find no prejudical error in the record, and the judgment will therefore be affirmed.