148 S. W. 2d 1083

Opinion delivered March 10, 1941.

*G. T. Sullins,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HUMPHREYS, J. A charge of assault with intent to kill Willis Glidewell, Fred Denton, and J. B. Keene in Washington county, Arkansas, on the 30th day of October, 1940, was preferred against appellant by the prosecuting attorney of the 4th judicial circuit, and soon thereafter appellant was tried to a jury upon the alleged charge in the circuit court of Washington county, convicted and adjudged to serve a term of two years in the state penitentiary as a punishment for the crime, from which judgment appellant has duly prosecuted an appeal to this court.

Appellant assigns two grounds as causes for a reversal of the judgment: First, that the evidence is insufficient to sustain a conviction for assault with intent to kill, and, second, that the trial court erred in permitting

the state, over appellant's objection to cross-examine him relative to former convictions for assault and battery, one of which occurred in 1924.

(1) The record reflects that on Wednesday two of the prosecuting witnesses and a son of the other were witnesses against appellant in the case tried during the day of October 30, 1940; that on that night he, in company with several others, went to the home of J. B. Keene and requested to see his son, Hubert; that J. B. Keene told appellant his son, Hubert, was not at home and his daughter told appellant that Hubert had gone to Springdale; that appellant and those with him in his car went away, but in a short time returned and again asked to see Hubert, and were again informed that Hubert was not at home, whereupon, either appellant or one of the women in the car with him said they had been watching Keene's home all evening and knew that Hubert was there; that J. B. Keene then asked appellant if he or they would tell him what they wanted with Hubert, but they refused to tell him and left; that J. B. Keene concluded their actions were suspicious and decided to go to the little town of Marstown where his son, Hubert, was spending the night with a friend; that he got in his car and started to Marstown, but observed appellant and his companions had stopped their car in front of the drug store in Dutch Mills, where he and appellant both lived, whereupon he went to the home of Fred Denton, his next door neighbor, to see if he would go to Marstown with him; that J. B. Keene left his car in front of Fred Denton's home with the lights on and went into the house; that while in Denton's home appellant and his friends drove up to the house, stopped and put out the lights in J. B. Keene's car and then went into the house and cursed them all out, using very vile and profane language to them, claiming they had double-crossed him in the trial of his case, and that he would get J. B. Keene and especially would get Hubert; that appellant said to Denton that he had kept him from starving, but that now Denton could get out and hunt him another job; that Willis Glidewell, who was spending the night with Fred Denton, saw appellant on Denton's porch and again saw and recognized him as

he, Keene, and Denton were going to Marstown; that after appellant and his friends left the Denton home, Keene, Denton and Glidewell started to Marstown in Glidewell's truck and intended to turn east after passing the store, but they drove straight on south because they saw appellant running toward them with a pistol in his hand, and two of them saw appellant point the pistol at the truck in which they were riding and all three of them heard him fire the pistol; that they then drove on to Marstown.

Appellant testified that he met a truck and at the time had a shirt is his hand wrapped in paper, but had no pistol and did not fire a pistol at the truck; that he did not know who was in the truck and on account of them driving rapidly he ran toward them to a place that was wide enough for him to get out of their way.

Appellant's friends who had been with him at the Denton home testified that appellant had no pistol in his hand, but that he had a shirt wrapped in paper, and that they heard no shots from a gun or pistol.

It is admitted that in submitting the disputed questions of fact to the jury for determination the instructions given by the court were correct, but appellant insists that the evidence, when viewed in the most favorable light to the state, wholly fails to show appellant intended to kill either of the prosecuting witnesses named in the charge against him, and that it fails to show any malice, and that for those two reasons the court should have instructed a verdict for him upon his request.

Relative to intent, this court said in the case of *Chrisman* v. *State*, 54 Ark. 283, 15 S. W. 889, 26 Am. St. Rep. 44, that: "For it was clearly the province and duty of the jury to consider the nature of the weapon used by the defendant and his manner of using it, together with all the other circumstances of the case, in determining whether the assault was in fact committed with the intent alleged in the indictment. 1 Bishop, Crim. Law, § 735 and note 1."

We think since the state witnesses testified that appellant came running toward them with a pistol in his

hands and·threw it down toward the automobile in which they were riding and fired same taken in connection with their testimony that only a very short time before he fired at them he had gone to the home of Denton and given them all a general cursing and threatened to get J. B. Keene and J. B. Keene's son, Hubert, and charged them all with double-crossing him, the matter of intent was one for the jury to be determined from all the facts and circumstances under the rule announced and quoted from *Chrisman* v. *State, supra.*

Appellant argues that no intent is shown in the testimony because he failed to hit the automobile in which they were riding with a bullet fired from the pistol. Poor marksmanship alone will not excuse appellant from the intent reflected by all the facts and circumstances in the case.

We also think that the facts and circumstances warranted the jury in finding that malice existed on the part of appellant. In the case of *Rhine* v. *State,* 184 Ark. 220, 42 S. W. 2d 8, this court said: "The law presumes malice from the intentional use of a deadly weapon in the commission of homicide unless the existence of malice is rebutted or overcome by the evidence which proves the killing."

(2) The contention of appellant that the cross-examination of him by the prosecuting attorney was vicious and prejudicial is without merit. The answers to the questions as to whether or not he had been convicted of assault and battery as many as three times and maybe oftener in the past was admitted to test the credibility of appellant and for no other purpose. This court said in the case of *Bowlin* v. *State,* 175 Ark. 1047, 1 S. W. 2d 546, that: "The next assignment of error is that the court allowed the prosecuting attorney to ask the defendant the following question: 'How many times have you been fined and pleaded guilty for fighting, or other offenses in Johnson county since you have lived here?' The defendant answered that he had not been in the last two years. In the first place, it may be said that the question was a proper one on cross-examination, as affecting the credibility of the defendant as a witness."

The ruling in the Bowlin case was affirmed recently by our Supreme Court in the case of *Craig* v. *State*, 196 Ark. 761, 120 S. W. 2d 23, in the following language: "Appellant's only contention for a reversal of the judgment is that the court committed reversible error in allowing the prosecuting attorney, over his objection and exception, to ask him on cross-examination whether he had been convicted of reckless driving prior to the accident. The trial court permitted the question and required him to answer it as a test of his credibility.

The question was relevant as affecting the credibility of appellant as a witness.

No error appearing, the judgment is affirmed.