GRONING *v.* STATE.

Opinion delivered October 2, 1922.

1. CRIMINAL LAW—CONCLUSIVENESS OF FINDING ON MOTION TO QUASH INDICTMENT.—The question presented by a motion to quash an indictment for collusion between the prosecuting attorney and other court officials to omit calling the names of certain alternate grand jurors and to substitute the names of others in their stead was one of fact to be determined by the trial court; and, where its finding is supported by evidence, it will not be disturbed on appeal.

2. LARCENY—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of stealing chickens.

4. LARCENY—ALLEGATION OF OWNERSHIP—VARIANCE.—On a trial for stealing chickens, an allegation that they belonged to a husband is supported by proof that they belonged to him and his wife jointly or to "the family."

5. WITNESSES—CROSS-EXAMINATION OF ACCUSED.—Cross-examination of defendant charged with stealing chickens as to whether he had been charged with selling whiskey and whether he had been in jail was properly permitted where the jury were instructed that such evidence should not be considered in arriving at a conclusion as to his guilt or innocence, but only on his credibility.

Appeal from Clay Circuit Court, Eastern District; *R. E. L. Johnson*, Judge; reversed.

*C. T. Bloodworth*, for appellants.

*J. S. Utley*, Attorney General, *Elbert Godwin*, Assistant, for appellee.

HART, J. John B. Groning and Joe Groning prosecute this appeal to reverse a judgment of conviction against them for the crime of stealing thirty chickens of the aggregate value of $30.

The first assignment of error is that the circuit court erred in refusing to sustain the motion of the defendants to set aside and quash the indictment. As grounds for their motion, the defendants introduced evidence tending to prove that the prosecuting attorney and other officers of the court had entered into collusion to have the names of certain alternates on the list of grand jurors not called and to substitute other persons in their stead.

On the other hand, the State introduced evidence tending to show that the names of the two alternate grand jurors in question were called by the clerk, and that, upon their failure to answer to their names, two other qualified persons were selected as grand jurors in their stead.

The circuit court made a specific finding of fact that the alternate list of grand jurors, which included the names of Luther Magee and Jesse Glasgow, was called, and that, upon the failure of these two persons to answer to their names, or to come into the jury box, the court ordered two other grand jurors to be summoned by the sheriff from the bystanders to take their places; that the sheriff thereupon summoned two other persons who were qualified to act as grand jurors, and they were duly sworn and impaneled as grand jurors in the place of said Luther Magee and Jesse Glasgow.

The question presented by the motion to quash the indictment was one of fact to be determined by the circuit court, and the finding made by the court was supported by the evidence introduced by the State. Therefore, under the settled rules of this court, it will not be disturbed upon appeal. *Jordan* v. *Muse,* 88 Ark. 587; *Burton* v. *Creel,* 122 Ark. 347; and *Thomas* v. *Thomas,* 150 Ark. 43.

It is next earnestly insisted that the evidence is not legally sufficient to support the verdict. The defendants denied their guilt and introduced evidence to corroborate their own testimony.

On the part of the State it was shown that thirty chickens, of the value of $1 each, were stolen from the

chicken-house of J. S. Hopper, in the Eastern District of Clay County, Ark., on the 14th day of March, 1922. Hopper had about one hundred chickens of all descriptions, and his chicken-house was situated about sixty yards from his dwelling-house. On the next morning after the chickens were stolen, Hopper found that some one had taken a plank off of the back of his chicken-house and that about thirty hens were gone. They were of the value of $1 each. Hopper saw signs of some one having been there. One of the persons wore gum boots and the other shoes. It had rained on the preceding night and it was easy to follow the tracks on the muddy ground. After following the tracks a short distance, they came to where two horses had been hitched to a sapling, and it was easy to follow their tracks on account of the front foot of one of them being of a very peculiar shape. The tracks were followed to the home of Lige Raymer, who had married the mother of the defendants. Joe Groning lived with them at the time. John B. Groning lived at Poplar Bluff, Mo., but was there on a visit at the time. When the searching party got to Raymer's, they found two horses which had been hitched to a wagon, and their tracks appeared to be about the same size as those followed to the house. The horse tracks which were followed by the searching party were the only ones that had been made in the road leading to Raymer's house since the rain on the preceding night. One of the horses hitched to Raymer's wagon made a track exactly like the peculiar track which the searching party had followed from near Hopper's house to Raymer's house. On that morning one of the defendants had on gum boots and the other shoes. The tracks which they made corresponded with the tracks leading from Hopper's chicken-house to where the horses appeared to have been hitched to a sapling. Hopper did not see any of his chickens at Raymer's house, but Mrs. Hopper identified two or three chickens at Raymer's as being part of those which had been stolen from their chicken-house on the night in question.

Was this evidence sufficient to warrant the verdict?

The undisputed evidence shows that thirty hens, of the value of $1 each, were stolen from the chicken-house of the Hoppers on the night of the 14th of March, 1922. The jury might have found from the evidence that these chickens belonged to J. S. Hopper, and that they were taken by the defendants. There had been a rain on the night the chickens were stolen and the ground was muddy. Tracks were found leading from the chicken-house to where two horses were tied near by to a sapling. One of the tracks was made by gum boots and one by shoes. On the next morning it was found out that one of the defendants had on gum boots and the other one had on shoes. Their tracks corresponded with the tracks leading from the chicken-house to where the horses were tied. The horses were followed by their tracks to the home of the stepfather of the defendants. One of these horses had a peculiar foot, which made a track like the track of one of the Raymer horses. The defendants were staying at Raymer's house at the time, and some of the chickens which had been stolen were found there. These circumstances pointed to the guilt of the defendants, and were sufficient to support the finding of the jury that the defendants were the guilty persons.

The next assignment of error is that there is a variance between the allegation of ownership of the stolen property in the indictment and the evidence in the case. This court has uniformly held that in an indictment for larceny the allegations of ownership are material and must be proved as alleged. *Mooney* v. *State,* 137 Ark. 410. The indictment alleged the chickens to be the property of J. S. Hopper. It is true that Mrs. Hopper stated that the chickens belonged to her husband and herself jointly, but her evidence on this point is not undisputed. It is also true that her husband at one point stated that the chickens belonged to the family, but he also stated in the same connection that he was the head of the family. In other portions of his testimony he spoke of the chickens as his own and as having been taken from his chicken-

house. Therefore, we hold that this assignment of error is not well taken.

The third assignment of error is that the court erred in permitting the prosecuting attorney to ask John B. Groning as to whether or not he had been charged with selling whiskey in Poplar Bluff, Mo., and as to whether or not he had been in jail there.

There was no error in permitting the question to be asked the defendant. In *Shinn* v. *State,* 150 Ark. 215, it was held that the accused in a criminal case may, for the purpose of testing his credibility, be questioned on cross-examination as to his having been a gambler and as to other offenses and immoralities. The court specifically told the jury that the evidence should not be considered by it in arriving at a conclusion as to the guilt or innocence of the defendant. The jury was also expressly told that it affected only the credibility of the witness.

Therefore the judgment will be affirmed.