LANE *v.* STATE.

Opinion delivered April 13, 1925.

1. JURY—"IMPARTIAL JURY.— To be "impartial," within Const. art. 2, § 10, and Crawford & Moses' Dig. § 3159, a jury in a criminal case must be composed of twelve men whose impressions on the merits of the cause are determined by the testimony adduced before them at the trial, and the integrity of the trial is destroyed if one juror enters the jury box entertaining and concealing actual bias against the accused.

2. JURY—IMPARTIALITY OF JURY—DISCRETION OF COURT.—The question of the impartiality of the jury, as guaranteed by the Const. art. 2, § 10, is a judicial question of fact within the sound discretion of the trial court.

3. CRIMINAL LAW—FINDING OF COURT—CONFLICTING EVIDENCE.— Where evidence as to the impartiality of a juror is conflicting, the finding of the trial court will not be disturbed.

4. JURY—DISQUALIFICATION BY BIAS.—Where a juror heard the testimony of the prosecuting witness at the examining trial and pronounced it the truth, but failed to disclose such fact on *voir dire,* he was disqualified as a juror, notwithstanding he testified that he entered the jury box without prejudice, nor does it matter in such case that the evidence establishes defendant's guilt.

Appeal from Greene Circuit Court, Second Division; *W. W. Bandy,* Judge; reversed.

*A. G. Little* and *Huddleston & Little,* for appellant.

The Constitution provides for a trial by an impartial jury. As to what is meant by an "impartial jury,"

see *Curry* v. *State,* 5 Neb. 413; *Randle* v. *State,* 28 S. W. 954; *Smith* v. *Eames,* 36 Am. Dec. 515; *Coughlin* v. *People,* 19 L. R. A. 57; *Stephens* v. *People,* 38 Mich. 739; *Jones* v. *State,* 52 So. 791; *Sasser* v *State,* 59 S. E. 255; *State* v. *Lathem,* 50 So. 780; *Turner* v *State,* 111 Pac. 988; *Robbins* v. *State,* 155 S. W. 52; *State* v. *Swafford,* 153 Pac. 1056; *Pitchford* v. *Com.* 125 S. E. 707; *Johnson* v. *State,* 244 S. W. 518; *Com.* v. *McClosky,* 117 Atl. 192; *Adams* v. *State,* 243 S. W. 474; *Baker* v. *Com.,* 233 S. W. 1046.

*H W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

WOOD J. At the December term, 1924, of the Greene Circuit Court, John Lane was indicted, tried and convicted of the crime of grand larceny, it being charged that he stole United States Government bonds, the property of James Alexander, of the value of $20,200. He appeals.

It was shown on a motion for rehearing that J. B. Kirchoff, one of the trial jurors, stated before the trial that he was present at the preliminary trial of John Lane for the same offense; that he heard the evidence adduced at that trial. He stated that he heard James Alexander, the prosecuting witness, testify, and he (Kirchoff) could tell from the testimony that Alexander was telling the truth; that anybody could tell from the way Alexander swore that he was telling the truth and they could not tangle him up." Mr. Block stated, in the presence of Kirchoff, "Of course you cannot tangle a man up when he is telling the truth." Kirchoff kept on discussing the case at some length after Block walked away, and stated that the bonds would have to be returned, even though Lane were acquitted, because gambling for property was not a legal transaction. Kirchoff further stated in the conversation that he had just come from the courthouse where he had attended the preliminary examination.

M. P. Huddleston, one of the attorneys for the appellant, testified that he questioned Kirchoff on his *voir*

*dire* as to whether or not he had formed or expressed any opinion as to the guilt or innocence of the appellant and whether or not he was familiar with the facts, or had heard the facts stated or related by any person. Kirchoff replied to these questions in the negative. Other jurors had been asked the same questions on their *voir dire,* and, upon answering that they were present at the preliminary examination and heard the facts stated, they were excused by the trial court on account of express bias. Huddleston further testified that he had no information during the progress of the trial of the facts tending to show the disqualifications of the juror Kirchoff.

Kirchoff testified that he might have entered into the conversation to which the witnesses had testified. He was pretty confident he did. He might have said the things the witnesses testified he did say. Kirchoff was asked the following questions:

"Q. Tell the court whether or not you ever said anything with regard to Lane keeping them (the bonds) if they were won in a crap game? A. I think if Lane won them in a crap game he ought to have the bonds. I have no feeling either way. Feel as good towards Lane as I do Alexander. Just a little bit more to Lane, if anything. * * * Q. On examination qualifying you as a juror, tell the court whether or not you were asked if you had been at the preliminary hearing? A. I don't think so. Q. If you had been asked that what would you have said? A. Yes sir."

Kirchoff was further asked whether he was asked, on his *voir dire,* whether he had formed any opinion as to the guilt or innocence of John Lane, and what his answer was, and he replied that his answer was "No sir." He further stated that he didn't have any opinion at that time; that he went in the jury-box capable of giving John Lane a fair trial and the benefit of the reasonable doubt; that his feeling toward John Lane at the time he went into the jury-box was very friendly; that he would have given him a little the best of it; that is the way he felt

about it. He didn't recall at the time of ever expressing any opinion in the case—did not remember the other conversation. He went into the jury-box without any opinion one way or the other, and the fact that he had heard the testimony at the preliminary examination did not affect or bias him in rendering his verdict as to the guilt or innocence of John Lane. He was guided in his verdict by his own judgment and by the testimony heard at the trial. No outside influence one way or the other entered into his verdict. He was not sure whether or not he was asked on his *voir dire* whether he could go into the jury-box and try the case according to the law and the evidence, notwithstanding what he had previously heard, but if he was asked that question, his answer would have been, "Yes."

Kirchoff further testified that, when the jury were deliberating on their verdict, the appellant was found guity by unanimous vote. Nine of the jurors were in favor of fixing his punishment at four years' imprisonment in the penitentiary, and witness and one juror were in favor of giving him only one year. The final sentence was for three years, which was brought about by the insistence of the witness and one other juror that the punishment be fixed at one year. If this witness and the other juror had not held out for the lighter sentence, the verdict could have been reached in five or ten minutes. As it was, the jurors delayed two hours before they returned a verdict fixing the punishment at imprisonment for three years.

The testimony of Alexander, the prosecuting witness, as taken at the examining trial, was, by stipulation, brought into this record, and, without setting out the same in detail, suffice it to say it shows that, if Alexander was telling the truth, Lane was guilty of the crime with which he was charged.

Our Constitution provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury." Article II, § 10, Con-

stitution. Our statute provides: "Actual bias is the existence of such a state of mind on the part of the juror in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he cannot try the case impartially and without prejudice to the substantial rights of the party challenging." Section 3159, Crawford & Moses' Digest.

Thus both the Constitution and statute guarantee to every accused person the right to an impartial jury in the trial of the offense with which he is charged. A trial jury in felony cases must be composed of twelve men who are indifferent between the prisoner and the commonwealth. 16 R. C. L., p. 181, § 2. To be strictly impartial, a jury should be composed of twelve men, each and all of whose minds, when they enter the trial jury-box, should be like a blank sheet of white paper, so to speak, with no impressions written thereon as to the merits of the cause. A jury, to be impartial, must have the impressions of the merits of the cause written or stamped on their minds by hearing the testimony adduced before them at the trial, and *after* they enter the trial panel—not *before*. To be impartial, a jury must be composed of twelve impartial men. Even if one juror enters the jury-box entertaining an actual bias against the accused and conceals such bias on his *voir dire,* the integrity of the trial panel is destroyed. *State* v. *Mott,* 74 Pac. (Montana), 728; *Woods* v. *State,* 41 S. W. (Tenn.), 811. Whether this constitutional and statutory guaranty of impartiality on the part of the jury has been infringed in any case is necessarily a judicial question and one of fact to be determined, in the first instance, by the court before whom the trial is had; and, where the impartiality of the jury is challenged, the trial judge is vested with a large measure of discretion in determining the issue. Where there is a conflict in the evidence as to whether a juror has entered the jury-box with a preconceived impression of the merits of the case, such as to render him unfit to try the case impartially between the prisoner and the commonwealth, the judgment of the

trial court on that issue, in the exercise of its sound discretion, will not be disturbed by this court. *Pendergrass* v. *State.* 157 Ark. 364, and cases there cited; *Curry* v. *State,* 5 Neb. 412-13. But where, as in the present case, a juror in advance has heard the testimony of the prosecuting witness in the preliminary hearing and pronounced that testimony to be the truth, and where a juror does not deny such fact, but, on the contrary, confesses that he might have said it, then there is no alternative but to hold that such juror entered the jury-box with an express bias which, under the Constitution and statute above, would disqualify him as a juror in the cause. Where such is the fact, the integrity of the trial is destroyed, notwithstanding the juror, on the trial of the issue of his impartiality, may testify that he really entered the jury-box without any bias or prejudice that would affect the trial, and that he could, and did, try the case according to the law and the evidence. The fact remains that Kirchoff, under the uncontroverted proof, entered the jury-box with an express bias in favor of the State against the appellant, which the uncontradicted proof shows was concealed on his *voir dire.* Whether this was intentional or unintentional on the part of the juror is wholly immaterial. Nor does it matter in such cases if the guilt of the accused be established beyond peradventure, for, however guilty one may be, he is nevertheless, under our Constitution and statute, entitled to a trial by a jury composed of jurors each and all of whom have not prejudged his guilt, or, what is the same thing, have not determined in advance that the testimony of a witness or witnesses for the State establishes the truth of the charge. See *Coy* v. *State,* 162 Ark. 178; *Shribner* v. *State,* 108 Pac. 422-426; *Glover* v. *State,* 57 S. E. 101-104, and other cases cited in appellant's brief.

The uncontradicted testimony shows that the juror Kirchoff entered the trial panel with an express bias against the appellant. He was therefore not an impartial juror, and the trial court erred in holding to the contrary. For this error the judgment is reversed, and the cause will be remanded for a new trial.