HAM *v.* STATE.

Opinion delivered February 18, 1929.

*D. F. McElhanon,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

MEHAFFY, J.   The appellant was indicted in Clark County, charged with the crime of murder in the first degree. It is alleged that he committed the crime by shooting and killing L. B. Harrison, on the 25th day of July, 1928.

A motion for continuance was filed by the defendant, and overruled, and exceptions saved. Defendant then filed a motion to quash the special panel of the petit jury, which motion was also overruled, and exceptions saved. The case was tried on September 15, 1928, and appellant was convicted of murder in the second degree, and his punishment fixed at seven years in the penitentiary. Mo-

tion for new trial was filed, overruled, and appellant prosecutes this appeal to reverse the judgment of the circuit court.

The appellant and Harrison were at a filling station on the Arkadelphia and Gurdon road, on the day of the killing, and they, together with Gerald Bishop, got in a car and drove down the road a short way; they went to an old slaughter-pen, and got some whiskey. After they had been together for some time, Harrison, the deceased, got in his car and left for Gurdon. Both the appellant and the deceased had been drinking. About four o'clock in the afternoon the appellant and Gerald Bishop went down the road in a car in the direction that Harrison had gone. Bishop, who was with Ham, and Ham both testified that they were going to Ike Halsell's to get a saddle for Ham, and they found Harrison's car in a ditch, and offered to help him get it out, but he was drinking, and began cursing. He got out his gun, and made Bishop leave.

Bishop testified that defendant had two guns, one in his right hip pocket and the other in his shirt bosom. After Bishop left, Ham went in his car down the road, and in about thirty minutes came back and said his car was stuck. They got Harrison's car out, and went down to where Ham's car was, to pull it out. Bishop got in Ham's car and drove it up past Harrison's car and up the road a little way. Harrison made them, according to their testimony, drink more whiskey, and threatened Bishop, and Bishop walked back up the road about 75 yards, and heard some words, and then heard four shots fired. He started in the direction where Ham and Harrison were, and met Ham coming out in his car. He got in the car with him and asked him where Harrison was, and Ham said: "You don't know." They went on, finally reaching Arkadelphia, and in doing so they went around about ten or twelve miles.

The appellant did not tell anybody about the killing until after he was arrested. The appellant testified that he killed the deceased in self-defense; that deceased had

a gun, and that he killed him because he had to do it. That he had gone down to Halsell's to get a saddle; the Bishop boy went with him, and they offered to get Harrison's car out of the ditch, and that Harrison was doing a good deal of cursing, and said they were going after liquor. Deceased had his gun out, and, when Bishop walked away up the road around the curve, Harrison called him a name, and said he wasn't looking for anybody, and that Ham promised not to bring Bishop down there, and that he was going to shoot appellant. He pulled his gun, and appellant backed off; then deceased still threatened to shoot him, and the appellant could not get to his car, and was afraid he was going to hurt some one, but that, when deceased saw that appellant was fixing to get in his car, he prepared to shoot. Appellant knocked his gun out of his hand, and picked it up, expecting to leave, but, as he rose with the gun, deceased was pulling another gun from his shirt bosom; had pulled it far enough out so appellant could see the handle, and then he shot him with the gun he picked up. He did not know what he did with the gun afterwards. Deceased was shot four times.

Numbers of witnesses testified, but there is some conflict in the testimony, and it would serve no purpose to set it out in detail.

Appellant's first contention is that the court erred in overruling his motion to quash the special panel of the petit jury. The special jurors were not selected by jury commissioners, but the court directed the sheriff to summon them, which the sheriff did.

Appellant's attorney said: "It is agreed by the State that the following named jurors, to-wit, * * *, were not selected by the bystanders, but selected by the sheriff," whereupon the court said: "Now, didn't you agree that that jury be summoned?" Appellant's attorney said: "No sir, I just suggested that we have extra men, but I wanted them selected." The court: "I know, but you did agree that the court could direct the sheriff to summon men to be here?" Whereupon

the attorney for the appellant said: "I rather suggested to Mr. Carrigan that we have special men here, but I wanted them selected according to what I thought was the law." Appellant's attorney said: "Let the record show that at this present term of the court, at the time this case was passed over until this 14th day of September, 1928, the attorney for the defendant suggested that a special panel be had the day of trial." And the court then said: "And that the court ordered the sheriff to summon a special panel of thirty men, and the State agrees that this special panel were summoned by the sheriff in pursuance of that order of the court, the special panel of jurors not to be resorted to until the regular panel were exhausted in the selection of the jury in the case." Appellant's attorney said: "And the defendant excepts to the special panel for the reason that they were not selected by the jury commission, as provided by §§ 6352 and 6354 of Crawford & Moses' Digest." He further said: "After the regular panel had been exhausted, when the special panel summoned by the sheriff were called for the purpose of being impaneled as jurors, the defendant at the time objected and excepted to the special venire."

They objected to the selection of the jury from the special venire for the reason that they have not been selected as provided by the above named sections.

The court thereupon overruled the motion to quash panel summoned by the sheriff.

This case, as the record shows, was tried at an adjourned term of the court. The court had convened in Clark County on the 23d day of July, and the defendant was not tried until the 14th day of September. Before the court adjourned, the attorney for the appellant admitted that, while he did not agree that the jury be summoned, he suggested that they have extra men, but he wanted them selected according to what he thought the law was. It does not appear from the record that he suggested at that time that he wanted them selected in any particular manner.

The appellant was arrested, and on the 25th day of July the court set the case for Thursday of the second week, which would be August 2. On the 2d day of August the appellant filed his motion for a continuance, and the court thereupon set the case for hearing on the 14th day of September, 1928. The case was therefore postponed until the adjourned term at the request of the appellant. It is true that he wanted it continued until the next term of court, but the question of postponement or continuance was in the sound discretion of the court, and it would appear that from the 2d of August until the 14th of September would give appellant ample time to prepare for the trial.

While the statute provides for the selection of jury commissioners and the selection of jurors by them, the statute provides that the circuit court shall select jury commissioners possessing the qualifications prescribed for petit jurymen, etc. And then the section referred to by appellant provides the manner by which the jury commissioners shall perform their duty. Section 6377 provides that if, for any cause, any of said jurors shall, at any time, be released from serving for the balance of the term, others shall be summoned and sworn, so that there shall be at all times a panel of twenty-four regular jurors. Section 6378 provides: "If a jury for the trial of any case cannot be obtained out of said panel of regular petit jurors, bystanders shall be summoned, as the court may direct, to complete such jury, and the oath mentioned in § 6375, adapted to that particular cause, shall be administered to said bystanders, and the record shall contain the names of said bystanders, together with the statement that they were selected and sworn according to law."

There is nothing in the record to show how many jurors constituted the panel when court met on the 14th of September. Evidently both the State and the defendant assumed that other jurors would have to be summoned; the defendant's attorney suggested that other

jurors be summoned, and the court thereupon directed the sheriff to summon 30 additional men.

It appears from the record in this case that § 6378 of Crawford & Moses' Digest was complied with. It appears that the jury could not be obtained out of the regular panel, and that the court ordered 30 additional men summoned. But the appellant insists that the section mentioned directs that they be summoned from the bystanders, and argues that the men selected by the sheriff were not bystanders. Of course, it may happen at any term of court that the petit jurors selected by the jury commissioners would be disqualified in a particular case, or a sufficient number of them be disqualified until it would be impossible to get a jury without summoning bystanders. It appears that this was true in this case. It clearly appears from the attitude of both the State and the appellant that additional jurors were necessary, and, if that were true, the court would have to order other jurors selected, and the statute provides that it must order them selected from bystanders. In the case of *Commonwealth* v. *Sacco*, 255 Mass. 369, 151 N. E. 839, the court said:

"At the trial the contentions of counsel for the defense were, that the extra jurors should have been summoned from bystanders, and not taken from the jury list of the county at large, and that the sheriff had no right to use his own judgment in selecting names from the jury list. There was no contention that the names were not taken from the jury list; but, had that objection been so made, it would not have affected the whole panel, and therefore is not a ground of challenge to the array. It does not appear that this objection was raised with reference to any particular person called to serve as a juror. * * * No fraud or partiality in favor of the Commonwealth or material injury to defendants is shown. It was a question of fact to be passed upon by the court, whether or not only talesmen were selected who would be likely to favor the Commonwealth, and the judge's finding that

they were impartially selected is final, no abuse of discretion appearing.''

''Bystander'' does not necessarily mean a person in or about the court room. The fact that he is in the court room or about the court room, or in the city where the case is tried, does not alone constitute such person a bystander. He is not a bystander in the sense of the statute unless he has no interest in the business or trial in the court. But a bystander means a qualified juror summoned by the sheriff from the county at large. *Baker* v. *State,* 79 Tex. Cr. Rep. 510, 187 S. W. 949; *Bennett* v. *State,* 161 Ark. 496, 257 S. W. 372; *Pate* v. *State,* 152 Ark. 553, 239 S. W. 27; *Rogers* v. *State,* 133 Ark. 85, 201 S. W. 845; *Sullivan* v. *State,* 163 Ark. 11, 258 S. W. 643.

The court therefore did not commit error in denying defendant's motion to quash the special panel.

It is next contended by the appellant that the court erred in overruling defendant's motion to excuse jurors Tom Gibbon, W. A. Calloway and Dick Ward for cause. These jurors testified that they had formed an opinion, but they had not formed an opinion from hearing the facts or hearing the witnesses' testimony. The opinions of these jurors were based on rumor, and in each case the juror stated that he would disregard any opinions he might have formed and base his verdict upon the testimony. With the means of communication and information now at hand, if every person who had heard rumors about the case and from that had formed an opinion was disqualified as a juror, it would, in many cases, be very difficult, if not impossible, to get a jury to try a certain case. But the purpose of the law is to get persons who can and will try the case fairly and base their verdict on the law and the evidence. Of course, if their opinion is based on facts within their knowledge, or evidence that they have heard, they would not be competent jurors. But the fact that they have formed or expressed an opinion does not disqualify them from serving on the jury if the opinion is based on rumor. *Corley* v. *State,* 162 Ark. 178, 257 S. W. 750; *Poindexter* v. *State,* 165 Ark.

614, 263 S. W. 375; *Cobb* v. *State,* 175 Ark. 1169, 299 S. W. 360.

Appellant insists that the court erred in permitting the prosecuting attorney to ask defendant if he had not, just a few days ago, killed a negro. This was on cross-examination, and this court said, in asking a witness on cross-examination how many times he had been fined and pleaded guilty for fighting or other offenses, that this was a proper question on cross-examination in affecting the credibility of the defendant as a witness. But the court also said that the defendant answered the question in the negative, and no prejudice could have resulted to him from the question when it was considered in connection with the answer. *Bowlin* v. *State,* 175 Ark. 1047, 1 S. W. (2d) 546.

In the instant case, no prejudice could have resulted, because the witness answered the question in the negative. But there was no error anyway, because it was proper on cross-examination as affecting his credibility. *Shinn* v. *State,* 150 Ark. 215, 234 S. W. 636.

This court has said: "It was competent for the State to cross-examine the accused concerning prior unlawful or immoral conduct, regardless of time, for the purpose of testing her credibility." *DuVal and Rice* v. *State,* 171 Ark. 68, 283 S. W. 23; *Bowlin* v. *State,* 175 Ark. 1115, 1 S. W. (2d) 553; *Barron* v. *State,* 155 Ark. 80, 244 S. W. 331; *Groning* v. *State,* 155 Ark. 85, 243 S. W. 959; *Lewis* v. *State,* 155 Ark. 205, 244 S. W. 458; *Davis and Smith* v. *State,* 169 Ark. 942, 277 S. W. 17.

This court has recently held in several cases that, on cross-examination of the person charged with crime, he may be asked about other crimes, for the purpose of affecting his credibility. And the questions asked on cross-examination of Ham were proper, and, as we have already said, could not have been prejudicial because the question was answered in the negative.

The appellant next contends that the court erred in giving and refusing instructions. The instructions are quite lengthy, and it would serve no useful purpose to

set them out at length. It is sufficient to say that we have carefully considered all of the instructions, and have reached the conclusion that the instructions as a whole clearly stated the law to the jury. In fact, some of the instructions complained about, or rather, some of the modifications, made the instructions more favorable to the appellant than the instructions were without the modifications. Every feature of the case was covered by the court's charge, and there was no error either in giving or refusing any instruction.

We find no error, and the case is therefore affirmed.