HOWELL *v.* STATE.

4681                                              247 S. W. 2d 952

Opinion delivered March 31, 1952.

*Fred M. Pickens, Jr.,* for appellant.

*Ike Murry,* Attorney General and *George E. Lusk, Jr.,* Assistant Attorney General, for appellee.

WARD, J. On July 4, 1951, appellant, Nathan Howell, was charged with first degree murder for killing Henry Robinson on the night of June 23, 1951, just after midnight. In October of the same year, appellant was tried before a jury, found guilty as charged, and sentenced to life imprisonment. He was represented by counsel appointed by the court.

From the testimony of witnesses and appellant's confession it appears: The deceased lived near Newport with his wife, Jean, and their children. As far back as 1947 appellant became infatuated with Jean Robinson who apparently accepted his attentions to the extent that they were planning to some day get married provided, of course, Jean could secure a legal separation from the deceased and appellant a like separation from his wife. When this situation was made known to the deceased he objected to the extent of threatening the life of appellant and on one occasion, about two weeks before the murder, when appellant tried to talk to deceased, the deceased knocked him down and stomped him a time or two. On the fatal night the deceased and others were playing cards at a friend's house when he was killed by a shotgun blast fired from the outside and through a window. According to appellant's confession he saw the deceased going to this house; he parked his car, took out a shotgun and loaded it; went to the house and waited by the window; finally when the opportunity presented itself he aimed the gun at deceased's head and fired; and then he ran to his car and drove the rest of the night to the Texas border. Before the trial was had appellant went to the scene of the murder and re-enacted it for the officers. After appellant was apprehended and brought back to Jackson County and before he was formally charged with any crime, he made and signed the con-

fession, which was introduced in evidence, in the presence of the prosecuting attorney and five or six other witnesses.

Appellant's motion for a new trial contains 37 assignments of error. We have carefully considered each assignment and find no reversible error. The assignments which we deem the most serious are discussed below, but to discuss the others would, in our opinion, serve no useful purpose.

## 1.

It is insisted that the court erred in refusing to dismiss on *voir dire* examination L. L. Mack as one of the jurors, and particularly in view of the fact that all peremptory challenges were exhausted by appellant before the full jury was finally selected. The record shows the following:

"Q. Mr. Mack, do you have such an opinion on your mind at this time as would take evidence to overcome it?

"A. Yes, sir, I don't know if the State supports what I have read of the thing, I have that opinion if that is true now. I am open minded on what the newspaper reported, but I have formed an opinion from that.

"Q. Could you, and would you go into the trial of this matter with an open mind and discharge any preconceived notion or opinion and render your verdict on the facts and circumstances developed in evidence, applying the law given by the court, could you render a verdict and disregard any idea you might have?

"A. I think I could.

"Q. Would you say you know you could?

"A. Yes, if the evidence warrants it."

Counsel for appellant then asked:

"Q. Are you telling this court that you at the present time have an opinion on your mind?

"A. Based on newspaper reports.

"Q. And that opinion would take evidence on the part of the defendant to remove it from your mind?

"A. I wouldn't say that. I would say if the State presents evidence as outlined by the press and other things, it would take some other evidence to disprove that, I don't know what the State is going to show."

The Court then asked:

"Q. In other words, it would be what the State develops the evidence?

"A. Yes, sir.

"Q. You could go into the jury box with a free and open mind?

"A. I don't see how I could keep from forming an opinion if the facts are as reported by the press.

"Q. But still you are open to discharge that from your mind and render a verdict as the State presents its case, also taking into consideration all the evidence which would include the defense, you could do that?

"A. Yes, sir."

It was not error for the court to refuse to dismiss the juror for cause under the many decisions of this court, such as: *Dolan* v. *State*, 40 Ark. 454; *Daughtry* v. *State*, 80 Ark. 13, 96 S. W. 748; *Dewein* v. *State*, 114 Ark. 472, 170 S. W. 582; and *Borland* v. *State*, 158 Ark. 37, 249 S. W. 591.

2.

The court refused to grant appellant's motion for the prosecuting attorney to turn over to him, before the trial, a copy of the said confession, and this is urged as reversible error. We do not agree with this contention for the reason that this state has never, by statute or judicial decision, recognized such a right. The nearest this court has come to doing so is the language used in *Jones* v. *State*, 213 Ark. 863, 213 S. W. 2d 974, where, when the same question was raised, the court said it could see no reason why such a request should not be granted and thought it should have been, but the court then went on to hold that the refusal by the lower court to grant such a motion did not constitute reversible

error. We can say here, as was said in the *Jones* case that a copy of the confession would have furnished no evidence that it was not fully and voluntarily made.

### 3.

It is also contended that the confession was not admissible in evidence because (a) it was made prior to arraignment and (b) it was not made voluntarily.

The first reason (a) has been settled against appellant's contention by former decisions of this court. See *State* v. *Browning,* 206 Ark. 791, 178 S. W. 2d 77, and *Dorsey* v. *State,* 219 Ark. 101, 240 S. W. 2d 30. In the former case the court, after a full review of the authorities, said: "We hold, therefore, that the trial court erred in holding the confession inadmissible on the ground that it was obtained before the accused had been arraigned before some committing authority . . ."

The other reason urged (b) is likewise not good. A careful review of the record convinces us there is substantial evidence to support the finding that the confession was voluntarily made. The court, after hearing preliminary testimony, submitted this question to the jury. This was the proper procedure under the decision of *Burton* v. *State,* 204 Ark. 548, 163 S. W. 2d 160. The confession was made in the presence of several witnesses who testified it was voluntarily given, and the length of the statement and the details contained therein lends credence to their testimony.

We note here also the court's instruction to the jury on this point: "Now, gentlemen, if there is any doubt whatsoever in your minds that this alleged confession was gotten from the defendant by any or either of those means stated by the defendant, you should repudiate it and not give it any consideration whatsoever, if you believe that was the case."

### 4.

Another allegation of error is the refusal of the lower court to grant a mistrial because certain jurors read newspaper accounts of the first day's proceedings of the trial.

At the close of proceedings of the first day of the trial the jury, by agreement, were allowed to separate and go to their homes, first having been duly admonished by the court. The next morning appellant's attorney was permitted to introduce in evidence a copy of the *Arkansas Gazette* and the *Newport Daily Independent* newspapers which carried articles about the trial. Each juror was asked if he had read either paper. Two jurors stated they had read the *Gazette* story and four jurors stated they had read the other paper's story. The headline of the *Gazette* story read: "Howell Changes Story of Shooting in the Newport Trial." The other headline was: "Signed Confession of Howell Admitted as Evidence in Trial." No juror was asked what impression the stories made on him.

After appellant's motion for a mistrial the court admonished the jury as follows:
"By the Court:

Gentlemen, a newspaper story is not evidence in a trial. The Court instructed you at the outset and has admonished you throughout the trial at various times that you will base your verdict only on the evidence or testimony developed on the witness stand under oath in the case, other facts and circumstances in proof in the case and the instructions as given you by the Court. I might ask this question to those jurors that did read one or the other of the stories—would it in any way affect you, or would you consider it in any way as evidence?
By the Court:

All jurors who read it answered in the negative. I shall admonish you further at this time that even though you answered in the negative, it is imperative that you do not consider this in any manner whatsoever in arriving at your verdict and you will render your verdict only on the proof developed in the trial of this case and under the law as the Court gives it to you in instructions."

In view of the above it does not appear that any prejudice was shown to have resulted, but it does appear that the court's admonition to the jury was thorough and

the court was correct in refusing to grant a mistrial. In the *Dolan* case, *supra,* it was said:

"Now, when newspapers are abundant in towns and cities, and hasten to ventilate homicides, and to guess at conjecture or facts, and volunteer chimney corner opinions of law, if citizens were rendered incompetent to serve as jurors by reading such newspaper articles, or by forming opinions from mere rumor, it would be difficult to make up juries of intelligent persons, in many communities, for the trial of such cases."

### 5.

Specific objections were made to instruction No. 18 relative to the confession being voluntary or involuntary. We think the instruction, given at the request of appellant, was correct and since the objections went to what was left out rather than to what it contained it is not deemed necessary to copy the lengthy instruction in full.

Apparently the instruction was partially based on an instruction approved in *Pugh* v. *State,* 213 Ark. 374, 210 S. W. 2d 789, which contained the exact language that appellant contends should have been in but was left out of instruction No. 18. The first portion of the "deleted" instruction reads as follows:

"The reason for the rule that the State has the burden of proving the voluntariness of a confession as distinguished from one that is wrested from a man by the use of force, threats of violence, threats, or violence or promises of reward, is because a man ought not to be compelled to testify against himself, so the application of threats, violence, or promises of reward is looked. upon with disfavor by the courts."

Of course the above exact language could have been properly incorporated in some instruction by the court, but it was not error to fail to do so. In fact is was nothing more than a reason for the instruction which the court actually gave. The court could give the jury the reasons for the rule of presumption of innocence or burden of proof but we have never held it reversible error to fail to do so.

The other "deleted" portion reads:

"Now, for a confession to be admissible, you must find beyond a reasonable doubt, first: That a confession was made; second: That it was true when it was made; third: That this confession produced in evidence was the one that was made; and, fourth: That it was voluntarily made and not made under any duress or promises of reward."

Now it will be observed that the above quote contains four prerequisites to admissibility. There is no question but that three of them, to-wit: First, that the confession was made, third, that the one made was produced in evidence, and fourth, that it was voluntarily made, were properly and adequately proven by the evidence and covered by the instructions. The same thing may be said for the second one [that it was true when it was made], though the reason may not be so apparent because of the peculiar wording. It could only mean that the jury must believe the confession portrays facts and not purely fiction. The jury had the privilege of deciding here what it would believe, for among other things on this point the court said: "You believe that portion you wish to believe, or believe it all, or not believe any of it." Thus we find no error in failing to give the exact instruction as requested.

There were some other objections by appellant to the instructions and also a request for an instructed verdict, but we have carefully examined them all and find no grounds for a reversal.

6.

It is insisted generally that the evidence is not sufficient to support the verdict of the jury, but we do not agree.

The evidence, viewed, as we must view it, in the light most favorable to the State; shows: Henry Robinson was killed by a shotgun blast through a window in the middle of the night; appellant, who previously had trouble with the deceased and an affair with his wife,

was in position to have committed the crime; and he hurriedly left for Texas where he was later apprehended. The actual killing having been proved, the confession, having been voluntarily made, became admissible in evidence to establish appellant's guilt, under Ark. Stats. § 43-2115 and numerous decisions of this court, including the recent ones in *Mouser* v. *State,* 216 Ark. 965, 228 S. W. 2d 472, and *Pigg* v. *State,* 219 Ark. 879, 245 S. W. 2d 209.

### 7.

Some objections were made to the admission or exclusion of certain testimony, but we have examined all of them and find no reversible error.

The court refused to allow the defense attorney to elicit, on cross-examination of deceased's wife, certain information about incidents which occurred in other states and which had no direct, if any, connection with the defense, but the court did allow full examination on all pertinent matters.

In answer to a question the sheriff, a witness for the State, made this reply: ''A. Well, no. He asked us what he was charged with. Of course, I guess he knew. He signed the paper.'' An objection was properly made, but any chance of prejudice was removed by adequate admonition to the jury by the court not to consider the answer.

Likewise timely objections were made to certain remarks made by the prosecuting attorney to the jury in his opening statement and also in his argument. We have carefully examined each of these statements and while we think some of them were objectionable we also find that the court, in each instance, properly and adequately admonished the jury and that any possible chance of prejudicial error was eliminated. It would, we think, serve no useful purpose here to set out these statements.

For the reasons set out above the judgment of the lower court is affirmed.