RUSH *v.* STATE.

5095                                                           379 S. W. 2d 29

Opinion delivered May 18, 1964.

*Hardin, Barton* and *Harton,* for appellant.

*Bruce Bennett,* Attorney General, By *Jerry L. Patterson,* Asst. Atty. Gen., for appellee.

Sam Robinson, Associate Justice. Appellant, Fred Rush, hereinafter sometimes referred to as Fred, has appealed from a conviction of murder in the first degree resulting in a life sentence in the penitentiary for the alleged killing of his step father, Paul Rush, hereinafter sometimes referred to as Paul, who was also Fred's adoptive father. The State's theory of the case is that Fred, his cousin Raymond Wood, and Carolyn Brown, entered into a conspiracy to kill Paul, and did kill him about 11 p.m. on May 13, 1962.

The State contends that in carrying out the conspiracy, in the early part of the night of May 13, Fred went by the V & R Sales Company, a furniture factory operated by the Rush family in Ft. Smith, and intentionally left a light burning on the third floor of the building; that later, in accordance with the plans of the conspirators, he drove by the building with his wife, and his children by a former marriage, and pretended to discover the light burning; that he then went to the apartment of his father, Paul, who was at the time separated from Fred's mother, and inveigled him into going to the factory with appellant to investigate the reason for the light burning; that in furtherance of the conspiracy, Raymond Wood was hidden in the building armed with a .22 caliber rifle waiting to kill Paul; that Carolyn Brown was waiting for Wood in an automobile outside the factory to enable him to escape after having killed Paul; that Wood did kill Paul and was driven away from the scene by Carolyn as planned; that in addition to killing Paul by shooting him in the neck with a .22 caliber rifle, Raymond shot Fred in the shoulder to allay any suspicion that Fred was in any manner involved in the killing.

Immediately after the killing, Fred was taken to a hospital and while there he was questioned by officers of the law.

Pat Taylor, a paramour of Fred's, was living in a motel in Ft. Smith with her cousin, Carolyn Brown. The next day, after the killing, Pat Taylor, Raymond Wood

and Carolyn Brown were questioned by officers; the questioning continued from time to time for months; they denied any knowledge of the killing.

Fred appears to be pretty much a libertine; although he was married and was living with his wife, he was keeping Pat Taylor. About nine months after the murder of Paul, Fred quit Pat Taylor and began to bestow his affections on one Louise Bromley. Along about the first of February, 1963, he left Ft. Smith with Louise Bromley and Carolyn Brown. They went to Houston, Texas, where they all lived together in an apartment.

About a month after Fred left for Houston with Carolyn Brown and Louise Bromley, and after first conferring with one Burnside, a professional bondsman and private detective, who had been engaged by the heirs of Paul, Pat went to the law enforcement authorities and told them that Fred, Raymond Wood and Carolyn Brown had conspired to kill Paul; that the plans to carry out the conspiracy had been worked out in her (Pat's) apartment in her presence. The arrest and conviction of Fred followed.

On appeal, appellant first contends that the court erred in refusing to grant a change of venue. At the hearing on the petition for change of venue it was shown that a local newspaper had given extensive coverage to the testimony of Pat Taylor and Bill Irons, witnesses for the State, who had testified at the preliminary hearing, and that there was great interest in the case all over the county. Attached to appellant's petition for a change of venue were the affidavits of about twelve residents of Sebastian County not related to the defendant. The substance of the affidavit is that the defendant could not get a fair and impartial trial in the county. The affiants appeared at the hearing on the petition and gave sworn testimony verifying what was said in the affidavits. There is no indication that any of the affiants is not a person of good character. The State offered no counter-affidavits and no rebuttal testimony.

Prior to the adoption of Initiated Act No. 3, adopted by the voters in 1936, our change of venue statute read: "Such order of removal shall be made on the application of the defendant by petition setting forth the facts verified by affidavit, if reasonable notice of the application be given to the attorney for the State, and the truth of the allegations in such petition be supported by the affidavits of two credible persons who are qualified electors, actual residents of the county and not related to the defendant in any way." C. & M. Digest (1921), § 3088.

This court has held that under the provisions of the foregoing statute the only issue to be decided on a petition for change of venue is the credibility of the affiants. The allegation of inability to obtain a fair trial could not be controverted. *Dewein* v. *State,* 120 Ark. 302, 179 S. W. 346; *Strong* v. *State,* 85 Ark. 536, 109 S. W. 536. It was also held that a credible person, within the meaning of the statute, is one who has knowledge of the feeling of the people throughout the county and is not merely a person ordinarily considered to be worthy of belief. *Duckworth* v. *State,* 80 Ark. 360, 97 S. W. 280; *Speer* v. *State,* 130 Ark. 457, 198 S. W. 113; *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386; *Hedden* v. *State,* 179 Ark. 1079, 20 S. W. 2d 119.

As heretofore mentioned, the change of venue statute was revised by Act No. 3. The statute now provides for the filing of counter-affidavits and the taking of testimony on the truth of the facts set out in the original affidavits, and provides that the court shall grant or refuse the petition according to the truth of the facts alleged in it and established by the evidence. Ark. Stat. Ann. § 43-1502 (1947). And this is the method that has been used since the adoption of Act. No. 3. *Lauderdale* v. *State,* 233 Ark. 96, 343 S. W. 2d 422; *Perry & Coggins* v. *State,* 232 Ark. 959, 342 S. W. 95.

In *Leggett* v. *State,* 227 Ark. 393, 299 S. W. 2d 59, hundreds of veniremen had been examined for the trial on the merits before the filing of the petition for change

of venue, and the jury was almost complete. From the testimony of the veniremen, previously heard, the court was able to reach the decision that the defendant could obtain a fair and impartial trial in the county.

In *Robertson* v. *State*, 212 Ark. 301, 206 S. W. 2d 748, the court said: ". . . The jurisdiction of trial courts has been enlarged to permit inquiry which before the adoption of Initiated Act No. 3 was not permissible. Pursuant to this enlarged authority the court heard the testimony of other witnesses besides that of the supporting affiants and announced the conclusion that appellant could obtain a fair trial in that jurisdiction. We may therefore review only the exercise of the judicial discretion vested in the court *and in view of the conflicts in the testimony,* we are unable to say that any abuse of this discretion was shown." (Emphasis added.)

In the case at bar there is no conflict in the testimony on the petition for change of venue. As heretofore mentioned, the State produced no affidavits and no witnesses on the question, and we cannot say that the court did not abuse its discretion in denying the petition for change of venue. We, therefore, hold that appellant is entitled to a change of venue.

On voir dire examination, the talesman C. E. Laws, stated that he rented a building to the V & R Sales Company (the Rush Company), and had discussed the case with an employee of that company; that such employee was listed as a witness, and that he (the venireman) had an opinion which would take evidence to remove, but that he could set aside the opinion and try the case on the evidence introduced at the trial and the instructions of the court. The defense challenged the venireman for cause; the court held that he was qualified; exceptions were saved.

In numerous cases this court has held that although a venireman has formed an opinion, from rumor and the reading of newspapers, that would take evidence to remove, he is qualified if he can go into the jury box and give both the State and the defendant a fair and impar-

tial trial and base his verdict only on the evidence introduced in the case and instructions of the court. *Hardin* v. *State,* 66 Ark. 53, 48 S. W. 904; *Ham* v. *State,* 179 Ark. 20, 13 S. W. 2d 805; *West* v. *State,* 150 Ark. 555, 234 S. W. 997; *Niven* v. *State,* 190 Ark. 514, 80 S. W. 2d 644. There it was pointed out that the venireman had not talked with any witness; *Howell* v. *State,* 220 Ark. 278, 247 S. W. 2d 952; *Leggett* v. *State,* 227 Ark. 393, 299 S. W. 2d 59. In *Lauderdale* v. *State,* 233 Ark. 96, 342 S. W. 2d 422, it was pointed out that the venireman had not talked to a witness.

But we have been cited to no case, and we have found none, holding that one is qualified to serve on a jury who has talked with a witness in the case and has formed an opinion that would take evidence to remove. We have at least two cases holding to the contrary. *Caldwell* v. *State,* 69 Ark. 322, 63 S. W. 59; *Lane* v. *State,* 168 Ark. 528, 270 S. W. 974. The court erred in holding the venireman, Laws, to be qualified to serve as a juror.

Carolyn Brown testified as a witness for the defense. She stated that on the night of the killing she and Raymond Wood had a date; that they drove to the top of a nearby hill and while there they fired a .22 pistol at some cans. From the record it appears that Wood had borrowed the pistol from appellant, who had a collection of guns. The prosecuting attorney had possession of the pistol in question. On cross-examination of Carolyn, she identified the pistol; over defendant's objection, the State was allowed to introduce it in evidence.

The State concedes that ballistic tests had been made and the pistol was not the weapon used in killing Paul Rush. But the State contends that the fact that Carolyn Brown and Raymond Woods had the pistol in some way corroborates Pat Taylor, and that the pistol was, therefore, admissible in evidence; but nowhere is it pointed out in what manner the pistol in any way corroborates Pat Taylor, and we have not discovered from the record how the pistol corroborates her. The pistol in question is very heavy for a .22 caliber; it has a 9-inch barrel, and

is rather wicked looking. The very fact that the pistol was admitted in evidence could have had a tendency to confuse the jury, notwithstanding there is no contention on the part of the State that the pistol was used in the killing. In these circumstances we do not think the pistol was admissible in evidence. *Everett* v. *State*, 231 Ark. 880, 333 S. W. 2d 233.

According to the testimony of Pat Taylor, she was, as a matter of law, .an accessory before and after the fact to the killing. She testified that preparations were made in her apartment for the killing; that Raymond Wood's hair was dyed by Carolyn Brown; that appellant cut strips of adhesive tape to put on automobile tires to disguise the tire tracks, and an automobile license number was changed, all in her apartment; that after the killing she assisted in removing evidence of the dye which she said had been on Wood's hair. These facts constitute her as an accessory. *Froman* v. *State*, 232 Ark. 697, 339 S. W. 2d 601. There is no distinction between an accessory before or after the fact and a principal. Ark. Stat. Ann. § 41-118 (1947).

By Instruction No. 7, dealing with the requirement that an accomplice must be corroborated, the court left it to the jury to say whether Pat Taylor was an accomplice. The appellant argues that the court should have told the jury that as a matter of law she was an accomplice. The instruction is not inherently erroneous and appellant made no specific objection; therefore, the point was not preserved for consideration on appeal.

Other points are argued which we do not discuss because they are not likely to occur at a new trial.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

McFADDIN, J., concurs.

ED. F. McFADDIN, Associate Justice (concurring). I agree that the judgment of the Circuit Court should be reversed (a) because of the juror, C. E. Laws; and also

(b) because of the admission of the pistol. Both of these matters are clearly stated in the Majority Opinion.

But I do not agree with the holding of the Majority in regard to change of venue. I am firmly of the view that when a defendant moves for a change of venue he has the burden; and if his witnesses fail to establish his claimed change, then the Court can so hold. In this case I think the defendant's witnesses failed to establish the defendant's right to a change of venue; and I think the Circuit Court was correct in refusing the change of venue.