CRAWFORD v. STATE.

4268                                         164 S. W. 2d 898

Opinion delivered October 5, 1942.

*C. T. Carpenter,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HUMPHREYS, J.   Appellant, Lee Crawford, and his son, Lester Crawford, were accused by prosecuting attorney in an information filed in the criminal division of the circuit court of Poinsett county, Arkansas, of assaulting Neil Holdman with a knife in said county with intent to kill him.

They were tried to a jury under instructions correctly defining the law on assault with intent to kill, assault with a deadly weapon and assault and battery.

Both were convicted for assault with intent to kill as charged.

The jury fixed the punishment of Lester Crawford at one year in the penitentiary, but recommended a suspended sentence which the court adopted.

The jury fixed the punishment of appellant at two years in the penitentiary, and from the judgment and sentence of the court to a two-year term in the penitentiary an appeal has been duly prosecuted to this court by appellant.

Appellant assigns as reversible error the insufficiency of the evidence to sustain the verdict and judgment for assault with intent to kill, arguing that the parties involved in the difficulty met unexpectedly on the road and had a family fight.

The evidence, viewed in the most favorable light to the state, reflects that Neil Holdman planted and cultivated a garden of two or three acres near his home and near where the appellant and his family lived; that appellant's children, at his instance, pulled up and destroyed the garden; that Neil Holdman swore out warrants for them; that after the service of the warrants upon them, they met Neil Holdman on the highway, and appellant said to Neil Holdman, "Who in the hell told you that I stole your stuff?" that Neil Holdman responded by saying, "I didn't need anyone to tell me, I saw it"; that appellant then said that anyone who said he stole the garden stuff told a damn lie; that Neil Holdman then said, "We will see about that," (meaning that they would see about it when the trial came up); appellant responded by saying, "We will see about it now"; that both appellant and his son, Lester, made for Neil Holdman and grappled with him; that Neil Holdman had a walking stick which he raised when they came at him and while they were struggling appellant's housekeeper said "Get the stick and beat him to death"; that during the struggle, in order to avoid an automobile which came

down the highway, they rolled down the dump into a ditch; that appellant and his son, Lester, were beating Neil Holdman over the head and on the back and during the struggle Lester Crawford kicked Neil Holdman over the eye; that at this juncture appellant told Lester Crawford to "cut him, cut him," whereupon, Lester Crawford stabbed Neil Holdman in the left arm with a knife that went to the bone and deadened the arm.

About that time Hal Stricklin, a deputy sheriff, came upon the scene and saw appellant's housekeeper kick Neil Holdman in the back while he was down in the ditch beside the road. He arrested appellant and some members of his family and testified as follows concerning the condition in which he found Neil Holdman: "His right eye or one of his eyes was closed, blood was running down his shirt back of his shoulder, he was bleeding in several places over his face and arm, and I didn't know that it was Mr. Holdman at first. I took his shirt off, and he showed me where he was cut on the shoulder. It was a straight stab. His face and head were scratched up all over. He had several bruises, and I noticed knots, several of them, on his head."

He further testified that he talked to the boy after arresting him and asked him about the knife. He asked him where the knife was that he struck Mr. Holdman with, and the boy said that he did not know anything about it. Mr. Stricklin said: "Lester, what did you do with the knife?" Lester said that he threw it away, that he threw it either in the field or in the borrow pit, he did not know just where, but there was no use hunting for it. The boy admitted that he stabbed Neil Holdman. He did not tell why he had done it.

We think the jury had a right to find from the above detailed evidence that appellant and a part of his family assaulted Neil Holdman with intent to kill him because he had sworn out a warrant for appellant and his family for destroying his garden. The jury did not agree with the construction appellant has put upon the evidence to the effect that the participants in the fight met unexpectedly on the road and had a family fight without

intent to kill Neil Holdman, and there is substantial evidence to sustain the view of the jury.

Appellant also insists for reversal of the verdict and judgment because the court allowed Neil Holdman to testify that he was in fear of losing his life during the fight and for testifying that he knew if someone did not come along the jig was up. Relative to this piece of testimony the court told the jury: "You will not consider what he thought, but you will consider it for whatever assistance it will give you in arriving at the state of mind of the parties at the time in determining whether the defendants did assault him, and if so whether they assaulted him with the intention to kill him."

Later on and before the case was sent to the jury the court instructed the jury to disregard the testimony objected to entirely as he doubted whether or not it would shed any light on the state of mind of the parties or on the question as to who was the probable aggressor.

Relative to the erroneous admission of evidence during the progress of a trial and the subsequent withdrawal thereof before the case was submitted to the jury this court, in the case of *Goynes* v. *State,* 184 Ark. 303, 42 S. W. 2d 406, quoted from 38 Cyc. 1440 as follows: "The general rule is that if inadmissible evidence has been received during the trial, the error of the admission is cured by its subsequent withdrawal before the trial closes, and by an instruction to the jury to disregard it."

In the instant case the court distinctly withdrew the piece of evidence objected to and told the jury not to consider it and explained why the jury should not consider it. If any error was committed in admitting the evidence the error was cured under the general rule announced in the case of *Goynes* v. *State, supra.*

Appellant also assigns as reversible error that the prosecuting attorney asked appellant on cross-examination whether he had killed his father-in-law. He answered "yes," but that he was justified in doing so. An examination of the record reflects that no objection was made to the question or answer at the time, so it cannot

be successfully argued now that appellant was prejudiced on account of the question and answer.

Appellant also assigns as reversible error that on cross-examination he was asked by the prosecuting attorney whether his son or his housekeeper shot at Neil Holdman's wife on the day of the trial for destroying Holdman's garden. He answered the question in the negative. Under the rule announced by this court in the case of *Benton* v. *State*, 78 Ark. 284, 94 S. W. 688, no prejudice resulted to appellant since he answered the question in the negative.

No error appearing, the judgment is affirmed.