UNITED STATES of America

v.

Clarence Edward BLALOCK.

Cr. No. 22244.

United States District Court
E. D. Pennsylvania.

May 13, 1966.

Drew J. T. O'Keefe, U. S. Atty., Joseph R. Ritchie, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Samuel Dashiell, Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

Defendant was convicted by a jury on all three counts of an indictment charging robbery of a federally insured bank and related crimes. At the trial, marked "bait money" taken from the bank in question and found by F.B.I. agents in defendant's hotel room was admitted in evidence over objection. Defendant now moves for a new trial, contending that this evidence should have been suppressed as the fruit of an unreasonable search and seizure.

The money was seized in a warrantless search which the Government contends was conducted with the consent of the defendant. Cf. United States v. Roche, 36 F.R.D. 413 (D.Conn., 1965). The testimony of F.B.I. Agent Strickland, who was in charge of the search, was that he and two other agents approached defendant and a companion, Miss Laverne Maxwell, in the hotel lobby, and that defendant agreed voluntarily to an interview in, and subsequently the search of, his room. N.T. 148–152. Before the evidence seized during the search was admitted, defense counsel objected on the ground that the search and seizure were illegal. No motion to suppress had been filed before trial, and I overruled the objection as untimely, adding parenthetically that the testimony showed that defendant had agreed to the search. N.T. 152–154.

Throughout the trial, defense counsel persisted in his objection to the evidence, and questioned the Government witnesses and the defendant vigorously on the circumstances surrounding the search and especially the possible existence of an arrest before the search was conducted. During the cross-examination of Agent Strickland, I explicitly permitted this line of inquiry, N.T. 172–173, and defense counsel explored the sequence of events preceding the search in his questioning of another of the three agents and of Miss Maxwell, both Government witnesses. The versions of the events differed significantly. Miss Maxwell related on cross-examination that the defendant had been searched in the hotel lobby and again in his room, and had been handcuffed before the entire party entered the elevator to go to his room. N.T. 226, 228. Serious legal and factual questions were presented about whether the search had been preceded by an arrest; whether there had been consent to the search; if

so, whether the consent was sufficiently knowing and voluntary to be effective, see Commonwealth of Pa. ex rel. Whiting v. Cavell, 358 F.2d 132 (C.A.3, March 6, 1966), or whether the circumstances were so inherently coercive as to vitiate any consent given, see Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Martinez v. United States, 333 F.2d 405, 408 (C.A.9, 1964) (dissenting opinion), vacated and remanded, 380 U.S. 260, 85 S.Ct. 953, 13 L.Ed.2d 959 (1965); compare Note, 113 U.Pa.L.Rev. 260 (1964).

At the conclusion of the Government's case, defense counsel renewed his motion to suppress the evidence. I denied the motion, finding from the testimony that there had been consent to the search, N. T. 233, and that defendant had not sustained his "burden of proof * * * on the question of suppression," N.T. 232.[1] When defendant later testified in his own behalf, he gave his version of what transpired in the hotel. According to him, the agents "grabbed" him, told him not to move, displayed a weapon threateningly, searched and handcuffed him, ordered him to admit them to his room, and searched it without asking or receiving his permission. N.T. 259–261. When defendant had finished his direct examination and part of his cross-examination, I stated that since defendant had voluntarily testified about these matters notwithstanding his privilege not to do so, I was "in a position to make a factual ruling" once again, based on the testimony of all the participants except one of the three agents, who was not a witness at the trial. N.T. 305. I then reaffirmed my decision that the motion to suppress was tardy and, additionally—resolving the conflicts in the testimony—that there had been effective consent to the search. N.T. 310.

Taking the opportunity for reflection that a motion for a new trial affords the trial judge,[2] I now conclude that a proper procedure was not employed in hearing the motion to suppress. Inasmuch as that is so, and as the procedure adopted prejudiced the defendant, a new suppression hearing will be required. It is therefore unnecessary to reach the merits of the exclusion question now.

■ Rule 41(e) of the Federal Rules of Criminal Procedure provides in part that a motion to suppress "shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, at the trial or hearing." It seems plain that the course I adopted was to exercise my discretion to entertain the motion at the trial. Any question of timeliness thereupon became moot or irrelevant, for denying the motion for tardiness and deciding it on its merits are incompatible alternatives under Rule 41(e).

■■ Once I undertook to entertain the motion, the suppression hearing should have been held out of the presence of the jury. Rule 41(e) "is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt." Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960). The interruption of "the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention." Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). A separate hearing also enables the defendant to testify on the collateral issue of suppression without waiving his privilege against self-incrimination on the merits of the charge or creating the possibility, if he were to testify on the suppression issue before the jury

1. Of course, when the search is without warrant, the burden is on the Government to show consent "by clear and positive testimony." Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651 (1951).

2. Cf. Frankfurter, J., dissenting in Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949): "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

but stand mute on the merits of the charge, that the jury would draw the prohibited adverse inference from his conduct.

█ The consequences of not holding such a hearing here were to deprive defendant of a full opportunity to carry the burden that I found he had not sustained[3] and inadvertently to infringe his privilege against self-incrimination. Had a suppression hearing been held, defendant could have called witnesses to substantiate, if he could, his allegations of illegal search and seizure. He would not have been bound by the Government's choice of witnesses, as he was here, in order to get a determination on the exclusion question before his own case began.

One of the witnesses he might have called was himself. Had he been able to testify on the suppression issue at the time the evidence he challenged was introduced, he would not have had to decide whether to take the stand in his own behalf without the benefit of a final ruling on the suppression issue. While I had at least twice before defendant opened his case denied the motion to suppress, both times I had considered all the testimony preceding my ruling in determining that there had been consent to the search. When at the close of the Government's case, I denied the motion for failure to meet the burden of proof, the inference might reasonably have been drawn by defendant that by his testimony he might fill the evidentiary void. That such a belief was well-founded is indicated by my later consideration—albeit rejection—of defendant's testimony on the consent issue. Thus, Blalock had to choose whether to take the stand (1) without the benefit of a final ruling on the suppression issue, i. e., without knowing precisely how much evidence was against him, and (2) with the added inducement that if he took the stand he might convince me of the absence of consent to the search. Yet he was entitled to know before he waived his privilege on

the merits of the charge by testifying thereon what the admissible evidence against him was. If the money had been suppressed, he would not have felt compelled to attempt to explain his possession of it, as he did, and might have chosen to remain silent altogether. And if it were to be admitted, the possibility of its ultimate exclusion could not have lingered as an inducement raising the ante for defendant to testify.

I conclude, therefore, that Blalock was placed in the unfortunate position of being coerced to take the stand and waive his fifth amendment privilege to support his fourth amendment contention. This was a dilemma both impermissible, cf. Jones v. United States, 362 U.S. 257, 261–264, 80 S.Ct. 725 (1960), and unnecessary. The motion should have been heard outside the presence of the jury; Blalock should have been given an opportunity to testify on the suppression issue alone and to present his side of the issue with his own witnesses in his own manner; and the final decision on the motion should have been made not later than the conclusion of the Government's case-in-chief, so that defendant's decision whether to testify could be informed and unfettered. As it was, the scope of the choice the privilege affords was "cut down" by "making its assertion costly." Griffin v. State of California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The treatment of the motion to suppress prejudiced defendant's trial. It is ordinarily permissible to remedy a deficient suppression hearing by merely ordering a new and full hearing, decision on the motion for a new trial to turn on the outcome of that hearing. See Campbell v. United States, 365 U.S. 85, 98–99, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); United States v. Shotwell Mfg. Co., 355 U.S. 233, 245–246, 78 S.Ct. 245, 2 L.Ed. 2d 234 (1957); Battle v. United States, 345 F.2d 438, 440 (C.A.D.C.1965); Peckham v. United States, 93 U.S.App.D.C. 136, 210 F.2d 693, 697 (1953). Cf. Jack-

3. I. e., the burden of supporting the motion.

son v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). That course would not be appropriate here, however. If the difficulty were just that Blalock did not know how much admissible evidence was confronting him, and after a new suppression hearing it were found that the challenged evidence was indeed admissible, a new hearing would suffice to cure any defect in the prior handling of the motion. But there was an additional vice here. Blalock was unconstitutionally induced to testify in his own behalf because of the prospect, not only that he could exonerate himself of the charges (which is the usual and proper inducement), but that he could persuade me to rule the evidence inadmissible. No new hearing on the motion to suppress, regardless of its outcome, could cure that subtle coercion, which resulted from the failure to hear and decide the motion properly in the Government's case. This rather unusual infringement of the privilege against self-incrimination requires that both a new trial and a new hearing prior thereto on defendant's motion for suppression under F.R.Crim.P. 41(e) be afforded. Cf. Pate v. Robinson, 383 U.S. 375, 386, 387, 86 S.Ct. 836, 842, 843, 15 L.Ed.2d 815, 822–823 (March 7, 1966).

Defendant has also made a motion in arrest of judgment because of insufficient proof of venue. That motion is denied. The circumstantial proof of venue was ample. See United States v. Karavias, 170 F.2d 968 (C.A.7, 1948); Cauley v. United States, 355 F.2d 175 (C.A.5, 1966).

### ORDER

AND NOW, May 13, 1966, it is ordered as follows:

1. Defendant's motion in arrest of judgment is denied.

2. Defendant's motion for a new trial is granted.

3. Defendant's motion for suppression under F.R.Crim.P. 41(e), at the trial, is reinstated and is scheduled for hearing before the undersigned on May 24, 1966 at 11:00 o'clock a. m.