LLOYD CABBINESS *v.* STATE

5233                          410 S. W. 2d 867

Opinion delivered February 6, 1967

*Don Langston,* for appellant.

*Bruce Bennett,* Attorney General; *Lance Hanshaw,* Asst. Atty. General, for appellee.

GEORGE ROSE SMITH, Justice. On the night of November 4, 1965, someone broke into Teague's Produce Store in Berryville and pried off the door of a safe. Apparently the intruder left without having taken anything. The appellant, Lloyd Cabbiness, a resident of Little Rock, was arrested the following night and charged with the burglary. Upon trial he was found guilty and sentenced to imprisonment for five years. He questions

the sufficiency of the evidence and the trial court's rulings with respect to physical exhibits offered by the State.

We find the prosecution's testimony to be sufficient to support the verdict. On the day of the burglary Cabbiness, a private investigator and former school teacher, borrowed a car from a woman living next to him in an apartment house and drove to Berryville. That evening Cabbiness was seen in downtown Berryville several times between seven and eleven o'clock. He was accompanied by an unidentified woman (not the owner of the car). Charles Robbins, a Berryville policeman, testified that early in the evening he directed Cabbiness to a telephone booth near the Teague building and that later on he saw Cabbiness's companion sitting in the car alone. There was other testimony from which the jury might have found that Cabbiness returned to the car with some tools and a flashlight, whereupon the couple drove hastily away.

At about two in the morning an employee of the produce company discovered that the building had been broken into and that the door of a safe had been "peeled" off. That door had been insulated by a layer of a white chalky substance. Whoever wrenched off the door had damaged the layer of insulation, scattering the chalky substance over the floor.

Officer Robbins had made a note of Cabbiness's car license number. With that information the police quickly traced the owner of the car and learned that Cabbiness had borrowed it. After Cabbiness was arrested the police found particles of a white chalky substance on the front floorboard of the vehicle. Laboratory tests proved that the substance taken from the car was identical with that found near the safe.

Upon the foregoing testimony the jury were warranted in concluding that Cabbiness was the person who broke into the Teague building. The appellant contends,

however, that there is no proof that he had the requisite intent to commit a felony or larceny, because apparently nothing was stolen. The short answer to this argument is that a larcenous purpose can fairly be inferred from the violent attack upon the safe.

The police took samples of the chalky substance from the scene of the burglary and from the car used by Cabbiness. It is now contended that the State failed to prove all the links in the chain of possession from the taking of the samples to their delivery to the police laboratory. *Jones* v. *City of Forrest City,* 239 Ark. 211, 388 S. W. 2d 386 (1965). The gaps, however, were not serious ones. For instance, Sheriff Bishop testified that he took a sample from the floor, put it in an envelope, and delivered it to Officer Atkinson the next night. The appellant argues that the whereabouts of the sample between the time the sheriff obtained it and the time he turned it over to Atkinson was not accounted for. Presumably it remained in Bishop's possession during that interval, but any doubt about that can be dispelled at a new trial.

After Cabbiness was arrested the police returned to his apartment and searched it, without a warrant. Among other things they found a revolver and some clothing. Before the trial began the defense attorney filed a motion to suppress this evidence on the ground that it had been obtained illegally. The court refused to pass upon the motion, saying that it was premature and that he would rule upon the admissibility of the evidence when it was offered.

When it became apparent during the trial that the State was about to offer the fruits of the illegal search, counsel for the defense asked that the witness be placed on voir dire; that is, that his testimony be heard out of the presence of the jury. That request was denied. The witness was then permitted to describe the revolver and the other articles that had been found in Cabbiness's apartment. After the matter had thus been brought to

the jury's attention the court finally sustained the objection to the evidence.

Despite the ruling the prosecuting attorney later asked another witness if the revolver had been loaded or unloaded. The defendant's objection to the question was sustained, but his motion for a mistrial was denied. Instead, the court polled the jurors individually and was assured by each one that he could erase from his mind the reference to the revolver.

We cannot approve such misguided zeal on the part of the prosecution. There is not, and could not have been, the slightest doubt about the inadmissibility of the revolver, not only because it was the product of an obviously illegal search but also because it had nothing whatever to do with the offense being tried. We have recently held that the introduction in evidence of a pistol having no connection with the crime in question is reversible error. *Rush* v. *State,* 238 Ark. 149, 379 S. W. 2d 29 (1964).

In simple fairness to the accused the motion to suppress the evidence should have been heard before the trial began, out of the presence of the jury. That procedure is required by Rule 41 (e) of the Federal Rules of Criminal Procedure and has been approved by many state courts. *United States* v. *Blalock,* 253 F. Supp. 860 (1966); *People* v. *Holmes,* 47 Cal. Rptr. 246 (1965); *Farrow* v. *Maryland,* 233 Md. 526, 197 A. 2d 434; *Stevens* v. *Oklahoma,* Okl. Cr., 274 P. 2d 402 (1954); *Hill* v. *Tennessee,* 211 Tenn. 682, 367 S. W. 2d 460 (1963). Some of the reasons for hearing the motion before the trial were given in the *Blalock* case, *supra*:

"Rule 41 (e) 'is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt.' *Jones* v. *United States,* 362 U. S. 257, 264, 80 S. Ct. 725, 732, 4 L. Ed. 2d 697, 78 A. L. R. 2d 233 (1960). The interruption of 'the trial for such auxiliary inquiries impedes the

902

momentum of the main proceeding and breaks the continuity of the jury's attention.' *Nardone* v. *United States*, 308 U. S. 338, 342, 60 S. Ct. 266, 268, 84 L. Ed. 307 (1939). A separate hearing also enables the defendant to testify on the collateral issue of suppression without waiving his privilege against self-incrimination on the merits of the charge or creating the possibility, if he were to testify on the suppression issue before the jury but stand mute on the merits of the charge, that the jury would draw the prohibited adverse inference from his conduct.''

We presume error to have been prejudicial in the absence of an affirmative showing to the contrary. *Connelly* v. *State*, 232 Ark. 297, 335 S. W. 2d 723 (1960). We are inclined to think that, on balance, the court's polling of the jury tended to emphasize the error rather than to correct it. Only a very unusual and very conscientious juror would publicly confess himself to be so weak-minded as to be unable to obey the court's admonition to disregard certain testimony. The sure way to avoid the possibility of prejudice is to exclude the incompetent evidence in the first place. If we should uphold the procedure that was followed in this case there is hardly any limit to the inadmissible testimony that might reach the jury's ears.

Reversed.

HARRIS, C. J., and FOGLEMAN, and JONES, JJ., dissents.

CARLETON HARRIS, Chief Justice, dissenting. I cannot agree that the court committed reversible error by denying appellant's motion for a mistrial, because of reference to the pistol. It is true that counsel for appellant had, prior to the commencement of the trial, moved to suppress the evidence involving the clothing and revolver that were found in appellant's apartment, on the ground that these items had been obtained illegally. I agree with that particular contention, since no search

warrant had been secured. However, appellant's counsel subsequently agreed that these articles could be admitted for purposes of identification, in counsel's words, "for no other purpose." Later, counsel reiterated his consent for that purpose. In *Frazier* v. *Sewell,* 241 Ark. 474, 408 S. W. 2d 597, the appellant requested an instruction, which was refused, and later appellant withdrew the request for the instruction. But on appeal it was contended that, in failing to give the instruction, the court had erred. We disagreed, saying:

"* * * The withdrawal of the requested instruction actually meant that appellant no longer wanted that instruction, and she was thereby placed in the same status as though the instruction had never been requested. We have repeatedly held that a party cannot complain of a trial court's failure to give an instruction unless same is requested."

It seems to me that the same situation exists in the case before us. Counsel's agreement for the articles to be offered, though only for a specific purpose, had the effect of withdrawing the motion to suppress. The articles were never exhibited to the jury; all were in a sack together, and every objection to their introduction as evidence was sustained by the court. The reversal of this case by the majority seems principally to be predicated upon the question by the Prosecuting Attorney as to whether the revolver found in the apartment had been loaded or unloaded. The objection to this question was sustained, but the motion for mistrial was denied, the court telling the jury to disregard any reference to the pistol. The jurors were then polled individually, and each answered that, in determining the guilt or innocence of the accused, he could completely disregard any reference to the revolver. The court was careful and specific, asking such questions as, "You are sure about it?" "Is there any doubt in your mind?" "You can completely disregard it in your deliberations in this case?" As stated, all jurors answered in the affirmative.

We have repeatedly held that an admonition to the jury to disregard improper questions or answers occurring during the trial cures any possible error, and the only exception to this rule is where the testimony is so prejudicial that an admonition cannot cure it. In *Crawford* v. *State*, 204 Ark. 748, 164 S. W. 2d 898, the trial court first admitted certain evidence that it subsequently decided was inadmissible. From the opinion:

"Later on and before the case was sent to the jury the court instructed the jury to disregard the testimony objected to entirely as he doubted whether or not it would shed any light on the state of mind of the parties or on the question as to who was the probable aggressor.

"Relative to the erroneous admission of evidence during the progress of a trial and the subsequent withdrawal thereof before the case was submitted to the jury this court, in the case of *Goynes* v. *State*, 184 Ark. 303, 42 S. W. 2d 406, quoted from 38 Cyc. 1440 as follows: The general rule is that if inadmissible evidence has been received during the trial, the error of the admission is cured by its subsequent withdrawal before the trial closes, and by an instruction to the jury to disregard it."

In *Kasinger* v. *State*, 234 Ark. 788, 354 S. W. 2d 718, we said:

"Appellants contend that error was committed when the Sheriff of Baxter County was asked by the State's attorney why he moved the appellants to a jail in Yellville, Marion County, and he replied, 'They'd broke jail here before;' also, error is asserted because of a question asked appellant Ray Kasinger by the State's attorney, 'How many times has Jack Gregory arrested you?' In each instance, the Court instructed the jury not to consider this question and answer. In *Davis* v. *State*, 155 Ark. 245, 244 S. W. 750, the prosecuting attorney made certain remarks which the appellant contended to be prejudicial, but this Court said:

" 'It will be noted that the court instructed the jury to disregard the remarks made by the prosecuting attorney and this, we think had the effect to cure any prejudice that might have resulted to the defendants from the remarks.' "

Likewise, in *Washington* v. *State,* 227 Ark. 255, 297 S. W. 2d 930, a similar situation arose. We said:

"The next assignment of error relates to the following answer given by Officer Jack Morgan when counsel for appellant asked him whether he knew appellant was a minor about sixteen years of age: 'Yes, we had him one other time.' Appellant's objection to the answer was promptly sustained by the trial court and the jury admonished not to consider it. If it be assumed that the answer was unresponsive to the question and erroneously given, any possible prejudice arising therefrom was cured by the court's action."

Also, in *Knight and Johnson* v. *State,* 228 Ark. 502, 308 S. W. 2d 821, we said:

"Harper was asked by the State if he received any money from any of the accused by way of restitution, and in replying in the affirmative he mentioned appellant's name. The witness was immediately interrupted by an objection on behalf of the appellant. Thereupon the court cautioned the jury to disregard the testimony. The court also asked the jurors if they could do that and all of them held up their hands to indicate they could. From this it is hard to see how any prejudice could have resulted to appellant."

Literally dozens of similar cases could be cited, but no point would be served in adding to the aforementioned citations, which clearly show that an admonition to the jury to disregard particular evidence is entirely sufficient, unless "it is manifest that the prejudicial effect of the evidence on the jury remains, despite its ex-

clusion and influences their verdict."[1] I certainly cannot agree that the Prosecuting Attorney's reference to the pistol makes manifest that the jury was prejudiced. The majority cite *Rush* v. *State*, 238 Ark. 149, 379 S. W. 2d 29, where we held that the introduction in evidence of a pistol, having no connection with the crime, was reversible error. Let it be quickly pointed out that in *Rush*, the defendant was being tried for murder—not burglary, the state charging that Rush had entered into a conspiracy to kill his stepfather, the elder Rush having been shot to death. Admittedly, the pistol there offered was not in the alleged crime, though it was of the same caliber as the murder weapon (a .22 pistol, the murder weapon being a .22 rifle), and there was evidence that some of the conspirators had been firing the pistol which was introduced. We said:

"* * * The pistol in question is very heavy for a .22 caliber; it has a 9-inch barrel, and is rather wicked looking. The very fact that the pistol was admitted in evidence could have had a tendency to confuse the jury, notwithstanding there is no contention on the part of the State that the pistol was used in the killing."

It is easy to see that, in a murder case, particularly where some of the alleged conspirators had been using the pistol, the jury could, in their minds, tie this in with the murder, but no such situation exists in the instant case. In the first place, there was no allegation, nor evidence anywhere in the record, that a pistol had been used; the pistol was not even shown to the jury, nor was an answer given to the question by the Prosecuting Attorney, the court sustaining the objection. I do not see how prejudice arises against a defendant simply because he had a pistol in his home. I daresay that thousands of good citizens individually keep a pistol in their respective homes for the purpose of protection. No one considers these citizens "dangerous" or "bad" because of this fact.

[1]This quote is from *Goynes* v. *State*, 184 Ark. 303, 42 S. W. 2d 406.

To summarize, counsel for appellant agreed that the items could be offered for identification; this in my view, means that he had abandoned his motion to suppress. The court sustained every objection made to offering these items in evidence, and when the pistol was referred to by the Prosecuting Attorney, the court quickly admonished the jury to disregard the question, and then took the additional precaution of polling each member individually for the purpose of ascertaining whether any prejudice resulted. Finally, I reiterate that keeping a pistol in one's home does not establish, or even indicate, that one is of bad character, or likely to commit unlawful acts. I respectfully dissent to the reversal.

JOHN A. FOGLEMAN, Justice, dissenting. I concur in the dissent of the Chief Justice. In *Sharp* v. *State*, 51 Ark. 147, 10 S. W. 228, in reversing a conviction of a defendant because of questions asked and a remark made by the trial judge, this court quoted with approval the California Court when it said:

"* * * From the high and authoritative position of a judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power, by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may on the one hand support the character or testimony of a witness, or on the other may destroy the same, in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the cause of the other."

I cannot see any reason why the statements of a trial judge admonishing a jury not to consider specified matters arising during the course of a trial cannot be presumed to have the same influence for fairness as they can for unfairness, particularly when the judge takes the extra precaution to inquire of each in-

dividual juror if he would and could abide by an admonition of the court.

To reverse this case is to say that the offering of the questioned evidence was so prejudicial to the appellant that even the tremendous influence of the trial judge could not by any means remove the prejudice and that the jurors, depended upon to arrive at just and true verdicts, could not be depended upon to give an honest answer to the judge's inquiry. I am unwilling to say this in the circumstances of this case.